SECURITY EQUITIES ET AL. *v.* RAFAEL GIAMBA ET AL.
(13511)

HEALEY, SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued December 8, 1988— decision released February 14, 1989

*Glen A. Canner,* for the appellants (plaintiffs).

*Judith Rosenberg,* for the appellees (defendants).

SHEA, J. The principal issue presented by this appeal is whether the failure to file the prescribed documents for formation of a limited partnership with the secretary of the state in accordance with our Uniform Limited Partnership Act (ULPA), General Statutes (Rev. to 1985) §§ 34-9 through 34-38o,[1] bars any claims among parties to the agreement based upon the existence of the relationship of a general to a limited partner. We conclude that noncompliance with such a filing requirement does not affect the rights of the parties under the underlying agreement as between themselves.

The plaintiffs, Security Equities, a limited partnership, and John J. P. Nocerino, have appealed from a judgment dissolving an attachment they had obtained

---

[1] The statutes relevant to the issues in this appeal were those in effect on July 1, 1986, when the parties entered their agreements. In 1986 the legislature amended various provisions of the Uniform Limited Partnership Act, but this enactment did not become effective until October 1, 1986. Public Acts 1986, No. 86-379.

following their ex parte application for a prejudgment remedy upon real estate of the defendants, Rafael Giamba and Diane Giamba, located in Stamford. The complaint alleged that the plaintiffs on July 1, 1986, had formed a limited partnership with the Giambas, to be known as Raffael Giamba, which is also a defendant in this action, for the purpose of operating a high fashion leather distributorship at a mall in Stamford. It alleged further that Security Equities pursuant to the partnership agreement had advanced $40,000 to the limited partnership as operating capital to be repaid in three years, as well as $17,800 in loans, that Nocerino had provided accounting services valued at $2000 and had paid expenses of $1160 for the limited partnership, but that the Giambas, the general partners, had sold off the merchandise, converted the funds and shut down the business in May, 1987.

At the hearing on the motion to dissolve the attachment, the trial court declared that the only issue was whether the parties had formed a limited partnership, an analysis with which counsel for the plaintiffs agreed.[2] The court examined copies of the partnership agreement and a supplementary agreement, both executed on July 1, 1986, which were attached to the complaint, and concluded that they did not establish a limited partnership. The plaintiffs attempted to offer testimony and other evidence that the understanding of the parties was to form a limited partnership. After the plaintiffs had conceded that no documents relating to a limited partnership had been filed with the

---

[2] In view of this concession before the trial court, we need not consider whether the complaint should be construed to set forth causes of action for debt, conversion or other theories of liability unrelated to the alleged status of the plaintiffs as limited partners. We are not inclined to invoke our discretionary authority to notice "plain error" in the context of a motion to dissolve a prejudgment remedy. Practice Book § 4185; see *Three S. Development Co.* v. *Santore,* 193 Conn. 174, 176, 474 A.2d 795 (1984).

secretary of the state, the court, concluding that no limited partnership existed "as a matter of law," refused to hear any further evidence and granted the defendants' motion to dissolve the attachment.

The plaintiffs claim that the trial court erred in concluding that: (1) failure to comply with the ULPA meant that there was no probable cause for their claims against the defendants based upon the existence of a limited partnership between them; and (2) the evidence offered to prove that the parties had agreed upon such a relationship was inadmissible at the hearing. We find error in both these respects and remand the case for further proceedings.

I

The defendants point out that the transcript of the hearing on their motion to dissolve, in conjunction with the copies of the agreements attached to the complaint, demonstrates a failure to comply with several provisions of the ULPA. No certificate of limited partnership has been executed or filed with the secretary of the state as required by § 34-10.[3] The name used in the agreements to refer to the partnership, "Raffael Giamba," does not contain the words "limited partnership," as § 34-13 (1)[4] specifies. Various additional

[3] General Statutes (Rev. to 1985) § 34-10 provides in part as follows: "(a) In order to form a limited partnership two or more persons must execute a certificate of limited partnership. The certificate shall be filed in the office of the secretary of the state and set forth . . . .

"(b) A limited partnership is formed at the time of the filing of the certificate of limited partnership in the office of the secretary of the state or at any later time specified in the certificate of limited partnership if, in either case, there has been substantial compliance with the requirements of this section."

This section was amended by Public Acts 1986, No. 86-379, effective October 1, 1986.

[4] General Statutes (Rev. to 1985) § 34-13 provides in part as follows: "The name of each limited partnership as set forth in its certificate of limited

requirements, such as the appointment of a statutory agent for service pursuant to § 34-13b (2),[5] have not been met.

Nevertheless, it is generally held that the purpose of these statutory provisions is to protect third persons and not the partners themselves. 59A Am. Jur. 2d, Partnership § 1278. Even where a limited partner under the agreement was held to be liable to creditors as a general partner because of noncompliance with a provision of a limited partnership statute, it was held that "[a]ll his relations to his copartners, and their obligations growing out of their relation to him as a special partner, remain unimpaired." *Abendroth* v. *Van Dolsen,* 131 U.S. 66, 73, 9 S. Ct. 619, 33 L. Ed. 57 (1889); see *Durant* v. *Abendroth,* 97 N.Y. 132, 144 (1884). Many other cases involving defects in the formation of limited partnerships have held similarly. See, e.g., *Brown* v. *Brown,* 15 Ariz. App. 333, 339, 488 P.2d 689 (1971); *Porter* v. *Barnhouse,* 354 N.W.2d 227, 231 (Iowa 1984); *Hoefer* v. *Hall,* 75 N.M. 751, 755, 411 P.2d 230 (1965); *Holvey* v. *Stewart,* 265 Or. 242, 246, 509 P.2d 17 (1973); *Rond* v. *Yeaman-Yordan-Hale Productions,* 681 P.2d 1240, 1242 (Utah 1984). In a related context, this court has recognized that provisions of our corporation statutes requiring that certain documents be filed with the secretary of the state are "primarily for the benefit of the public; that is, of those persons who may desire to

partnership: (1) Shall contain without abbreviation the words 'limited partnership.' "

This section was amended by Public Acts 1986, No. 86-379, effective October 1, 1986.

[5] General Statutes (Rev. to 1985) § 34-13b (2) provides as follows: "Each limited partnership shall continuously maintain in this state . . .

"(2) An agent for service of process on the limited partnership, which agent must be an individual resident of this state, a domestic corporation or a foreign corporation authorized to do business in this state."

This section was amended by Public Acts 1986, No. 86-379, effective October 1, 1986.

do business with the corporation." *Barrows* v. *Natchaug Silk Co.*, 72 Conn. 658, 664, 45 A. 951 (1900).

We also note that § 34-19[6] of the ULPA declares that "a person who makes a contribution to a business enterprise and erroneously but in good faith believes that he has become a limited partner . . . is not a general partner in the enterprise and is not bound by its obligations . . . if, on ascertaining the mistake" he files the appropriate certificate with the secretary of the state. An exception is made, however, for "any third party who transacts business with the enterprise" before that certificate is filed; but "only if the third party actually believed in good faith that the person was a general partner at the time of the transaction." This distinction between third parties and others as to the liability of a limited partner is consistent with the view that noncompliance with the ULPA provisions concerning the formation of a limited partnership does

[6] General Statutes (Rev. to 1985) § 34-19 provides as follows: "(a) Except as provided in subsection (b), a person who makes a contribution to a business enterprise and erroneously but in good faith believes that he has become a limited partner in the enterprise is not a general partner in the enterprise and is not bound by its obligations by reason of making the contributions, receiving distributions from the enterprise or exercising any rights of a limited partner, if, on ascertaining the mistake, he:

"(1) Causes an appropriate certificate of limited partnership or a certificate of amendment to be executed and filed; or

"(2) Withdraws from future equity participation in the enterprise by executing and filing in the office of the secretary of the state a certificate declaring withdrawal under this section.

"(b) A person who makes a contribution of the kind described in subsection (a) is liable as a general partner to any third party who transacts business with the enterprise (i) before the person withdraws and an appropriate certificate is filed to show withdrawal, or (ii) before an appropriate certificate is filed to show his status as a limited partner and, in the case of an amendment, after expiration of the thirty-day period for filing an amendment relating to the person as a limited partner under section 34-32, but in either case only if the third party actually believed in good faith that the person was a general partner at the time of the transaction."

This section was amended by Public Acts 1986, No. 86-379, effective October 1, 1986.

not affect the rights of the partners among themselves based upon the underlying agreement. We conclude that the trial court's reliance upon the failure to file a certificate of limited partnership, as well as the existence of other nonconformities with the ULPA, was misplaced.

## II

The refusal by the trial court to allow the plaintiffs to present testimony as well as documentary evidence at the hearing on the motion to dissolve the attachment was based primarily on the plaintiffs' admission that no papers had been filed with the secretary of the state as specified by the ULPA. The court appears to have concluded also, however, from examining the copies of the two agreements attached to the complaint, that the existence of a limited partnership was not sufficiently established. The defendants contend that this finding was well within the discretion of the trier and should serve as an independent ground to support the dissolution of the attachment.

It is true that the agreement entitled "Articles of Partnership," which the court examined, contains no indication that anything more than an ordinary partnership was to be formed. An additional agreement of the same date, attached to the complaint and also examined by the court, however, contained the provision that "Rafael Giamba and Diane Giamba will act as general partners for Raffael Giamba and will be in charge of overseeing and operating the company." This reference to the individual defendants as the "general partners" creates at least some ambiguity as to whether the parties intended to form a limited partnership, as the plaintiffs claim.

The parol evidence rule, to which the defendants allude, would not have barred the plaintiffs from presenting testimony or other evidence as to what had

transpired between them and the defendants in regard to making the agreement, because it is not an exclusionary rule of evidence but a principle of substantive law. *Damora* v. *Christ-Janer,* 184 Conn. 109, 113, 441 A.2d 61 (1981). Without affording the plaintiffs the opportunity to present such evidence, it cannot be determined whether this legal principle, that prior oral agreements cannot vary the terms of a written contract intended by the parties as "the repository of their final understanding," would be applicable. *Harris* v. *Clinton,* 142 Conn. 204, 210, 112 A.2d 885 (1955). Moreover, the parol evidence rule applies only to precontractual negotiations and, therefore, would not apply to some of the evidence offered by the plaintiffs at the hearing, such as the partnership tax returns and a lease, which was executed on the same date as the partnership agreements. *Cohn* v. *Dunn,* 111 Conn. 342, 346–47, 149 A. 851 (1930); E. Farnsworth, Contracts § 7.6. In view of the refusal of the trial court to hear the plaintiffs' evidence, the conclusion it drew from examining only the two agreements attached to the complaint cannot be upheld.

There is error, the judgment dissolving the attachment is set aside and the case is remanded for further proceedings.

In this opinion the other justices concurred.