[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This suit is an action brought pursuant to General Statutes § 47-31 to settle title in certain exercise equipment. A more accurate description, however, is that the purpose of the suit is to settle claims in a fund representing proceeds from an agreed upon sale of the equipment. The fund is presently in the care of escrow agents of the parties.
The defendant, National Properties, Inc., is an original party to the action. Its answer is basically a general denial of the allegations of the complaint. Initially, however, the plaintiff was F. A. Wallingford III, Inc., a subsidiary of The Bank Mart. In 1991, The Federal Deposit Insurance Corporation (FDIC) as receiver of The Bank Mart was substituted as plaintiff. And in 1995, Remington Investments, Inc. became the plaintiff as a result of an assignment from the FDIC.
 I.
From the evidence introduced at the trial, including reason inferences derived therefrom, the court finds that the facts set forth below were established.
Peter Penczer is an attorney and a real estate developer. At present, he is president of Connecticut Property Development, Inc. The shareholders of this corporation are his wife, Lynn, and Gail Jarvis. Penczer is also secretary and treasurer as well as a director and shareholder of the defendant National Properties, Inc. The other officers who are also directors and shareholders are Martin J. Ryan, Jr., president; John W. Jarvis, the husband of Gail, vice-president; and Robert W. Rowan also a vice-president. Connecticut Property Development, Inc. and National Properties, Inc. share an office at 1375 Kings Highway East in Fairfield.
At present, National Properties, Inc. is not conducting business. Prior to the end of 1994, however, National Properties, Inc. was a real estate developer and a keeper of records for properties owned by the various Fairfield Associates entities. The Fairfield Associates entities were six partnerships named Fairfield CT Page 8084 Associates, Fairfield Associates II, Fairfield Associates III, Fairfield Associates IV, Fairfield Associates V and Fairfield Associates VI. In all of the partnerships, Peter Penczer, Martin J. Ryan, Jr., John W. Jarvis and Robert W. Rowan were general partners. Penczer ran National Properties, Inc. and in many respects, he was the managing partner of Fairfield Associates, III.
Fairfield Associates III owned a building at 6 Fairfield Boulevard in Wallingford which it had received by a conveyance from Fairfield Associates. The conveyance was subject to a mortgage that was given by Fairfield Associates to The Bank Mart in 1986. The other Fairfield Associates partnerships owned parcels or buildings that were either contiguous to or close by the building owned by Fairfield Associates III.
Among the tenants of Fairfield Associates III at 6 Fairfield Boulevard was Corporate Physique Training Center, Inc. a health club or health center. In 1989, Corporate Physique Training Center, Inc. was delinquent in paying rent and common area maintenance charges. On October 13, 1989, Fairfield Associates III and Corporate Physique Training Center, Inc. entered into an agreement entitled "Lease Termination Agreement." In the agreement, Fairfield Associates III was referred to as "Landlord" and Corporate Physique Training Center, Inc. was referred to as "Tenant". Recited in the agreement were Tenant's defaults in rent payments for nine months and defaults in common area maintenance charges for one year. The agreement provided, inter alia, that:
 2. Tenant hereby gives possession of the Premises, including without limitation all items of equipment and furnishings which are bolted or otherwise attached to the Premises to the landlord. The landlord accepts possession of the Premises in the condition delivered.
 3. Tenant hereby transfers all of its right, title and interest in all of the personal property belonging to the Tenant and located in the Premises, including without limitation all of the personal property enumerated in Exhibit A to the Bill of Sale attached to this hereof as Exhibit 1.
4. Simultaneously with the execution of this CT Page 8085 Agreement Landlord has paid Tenant the sum of $15,000.00, receipt of which is hereby acknowledged by tenant.
The Lease Termination agreement was signed on behalf of Fairfield Associates III by Martin J. Ryan, Jr., who also is president and a director and shareholder of the defendant National Properties, Inc.
Attached to the Lease Termination agreement was an undated document entitled "Bill of Sale". By this document, Corporate Physique Center, Inc. sold, assigned, transferred and delivered to Fairfield Associates III all of its assets of every kind and description located at 6 Fairfield Boulevard "including without limitation those assets on Exhibit A hereto." The bill of sale was signed by the Secretary and the president of Corporate Physique Training Center, Inc. and by Martin J. Ryan, Jr. for Fairfield Associates III.
When placed in Evidence as Plaintiff's Exhibit F, neither the Lease Termination Agreement nor the Bill of Sale had attached as "Exhibit A" or otherwise an enumeration of the personal property. Peter Penczer, however, identified a list of health equipment under the title "Corporate Physique Training Center Equipment List October 9, 1989" as "the list of equipment that we got from Corporate Physique and leased to Healthworks." The list is Plaintiff's Exhibit H. On the list, the various articles of equipment are described and have one amount for price and a lesser amount for price and a lesser amount for value. At the beginning of the document, the following explanation appears: "The foregoing list represents the existing equipment at Corporate Physique Training Center. It's (sic) purchase price and current value placed on said equipment by the owner's (sic) of the club." The total amount of the value column is $75,742.00. On the grand list of the Town of Wallingford as of October 1, 1989, the personal property of Corporate Physique Training Center was listed as commercial furniture with an assessed valuation of $67,000.00.
A photocopy of the front side of a check of Fairfield Associates V dated October 13, 1989 for $15,000.00 payable to Corporate Physique Training Center, Inc. with a notation thereon that it was "per Lease Termination Agreement: was placed in evidence as Defendant's Exhibit 2. This check is the basis for the defendant's claim that Fairfield Associates V not Fairfield Associates III acquired the equipment and on the same day transferred it to the defendant National Properties, Inc. The CT Page 8086 check was signed by M.J. Ryan, Jr. As previously mentioned, Martin J. Ryan, Jr. is the president of National Properties, Inc. and a general partner in all of the entities bearing the name of Fairfield Associates.
Peter Penczer testified that he did not know the legal consequences of the various happenings that occurred on October 13, 1989. He stated that he went into a meeting, a lease was terminated and at the end of the meeting, National Properties, Inc. owned the equipment. There was no documentation at all of any transfers between Fairfield Associates III and Fairfield Associates V or from Fairfield Associates V to National Properties, Inc.; no evidence of any consideration given by National Properties, Inc. to Fairfield Associates III or Fairfield Associates V for the equipment. The only evidence to support the claim of ownership of National Properties, Inc. is Penczer's testimony and his registering the equipment with the Wallingford Assessor's office at the disclosed purchase price of $15,000.00 and a net depreciated value of $13,500.00. The equipment appears on the Wallingford Grand List of October 1, 1990 in the name of National Properties, Inc., 4 Fairfield Boulevard, as commercial furniture with an assessment of $9,450.00.
As a result of the Lease Termination Agreement, Corporate Physique Training Center, Inc. vacated the premises on October 13, 1989 having been released from the obligation to pay arrearages that amounted to several thousands of dollars. The health equipment remained in the formerly leased premises at 6 Fairfield Boulevard.
Fairfield Associates III continued to deal with the equipment as its own. On October 26, 1989, Fairfield Associates III leased the vacant premises at 6 Fairfield Boulevard for six years with an option to review for four years to Healthworks Ltd. In a rider to the lease, Fairfield Associates III agreed that it would not lease space in the park to another tenant operating a health club therein although Fairfield Associates III only owned one building. Schedule B of the lease is entitled "Equipment Rental" and is a lease of the same equipment that originally belonged to Corporate Physique Training Center, Inc. The term of the Equipment Rental paralleled that of the real estate rental and the rent for the equipment was $700.00 per month. A provision as to ownership in the Equipment Lease reads:
The Equipment shall at all times be the sole CT Page 8087 and exclusive property of the Lessor. The Lessee shall have no rights or property interest in the Equipment, except for the right to use it in the normal operation of the health club maintained by the Lessee at the address set forth above.
Martin J. Ryan, Jr. signed the lease, the rider and the Equipment Rental on behalf of Fairfield Associates III. His association with Fairfield Associates III, Fairfield Associates V and the defendant National Properties, Inc. has already been noted.
Fairfield Associates III became delinquent in its mortgage payments for 6 Fairfield Boulevard to The Bank Mart. On April 23, 1991, an agreement was executed between Fairfield Associates III and The Bank Mart. Peter Penczer signed the agreement for Fairfield Associates III and Peter Penczer, John W. Jarvis, Martin J. Ryan, Jr. and Robert V. Rowan signed the agreement as guarantors. The agreement, Plaintiff's Exhibit I, recites a total debt, as of April 23, 1991 of $4,065,332.39 and that the Borrower has offered the Lender a deed in lieu of foreclosure of (p. 3) the real estate and also
 (p. 3) b. Title in and to all personal property of Borrower located on the Property, all personal property of Borrower or Guarantors acquired for installation or use in connection with the Property. . . .
In the agreement, the Borrower was to make its conveyances to the Lender's nominee F.A. Wallingford, III. For the real estate, the instrument of conveyance was to be a quitclaim deed. For the personal property, a warranty bill of sale, duly executed and acknowledged by the Borrower, conveying to the Nominee title to the personal property, free and clear of any encumbrances. Plaintiff's Exhibit I differs from the other written documents in the case in that it has an express integration clause. All prior or contemporaneous agreements, understandings, representations and statements, oral or written are considered to be merged into the written document.
Plaintiff's Exhibit J is the instrument conveying the personal property to which reference was made in the agreement between Fairfield Associates III and The Bank Mart. Both documents were signed on April 23, 1991. In Exhibit J Fairfield Associates III CT Page 8088 conveyed to F.A. Wallingford III, Inc.
 All personal property of Seller located on the property known as 6 Fairfield Boulevard, Wallingford, Connecticut, all personal property of Seller acquired for installation or use in connection with said property, wherever located and all of Seller's rights (but not any of their obligations, if any) under contracts or other arrangements to acquire personal property for installation or use in connection with improvements to said property, including without limitation all personal property set forth on Schedule A attached hereto.
This time John W. Jarvis, signed for Fairfield Associates III and he along with partners, Martin J. Ryan, Jr. and Peter Penczer, also signed the document individually.
When Plaintiff's Exhibit J was introduced, it did not have an attached schedule A. Peter Penczer testified that at some time on April 23, 1991, he said that Fairfield Associates III did not own any personal property so there was no need for a bill of sale. He stated he offered to give a bill of sale with a blank schedule attached. In the end, however, Penczer said he signed Exhibit J, the bill of sale with no schedule attached.
In a letter dated April 29, 1991, Frederick Fallon, executive director of Healthworks, informed Peter Penczer that the facility at 6 Fairfield Boulevard would close on October 31, 1991 and offered to purchase the equipment for $30,000.00 payable in three annual installments of $10,000.00 each. By letter to Fred Fallon dated July 31, 1991, Peter Penczer confirmed that a sale of the equipment to Healthworks had taken place. F.A. Wallingford III, Inc., as a subsidiary of The Bank Mart, began this action against National Properties, Inc. to determine ownership of the fixtures in November, 1991.
In December, 1991, the Federal Deposit Insurance Corporation was appointed receiver of The Bank Mart. The FDIC was substituted as party-plaintiff on February 6, 1992. Subsequently on January 27, 1993, J.E. Robert Company of New England acting under a power of attorney from the FDIC entered into an agreement with National Properties, Inc. whereby the sale by National Properties, Inc. to CT Page 8089 Healthworks was approved and the res, ownership of which was to be determined, was transferred from the equipment to the proceeds of the sale which were placed in escrow. This agreement is in evidence as Plaintiff's Exhibit M. An assignment of the proceeds to the escrow agents was delivered by Peter Penczer as president of National Properties, Inc. to Healthworks on February 5, 1993. A written assignment by the FDIC of all of its right, title and interest in this legal proceeding to Remington Investments, Inc., the present plaintiff, took place on March 5, 1996.
 II.
Several preliminary matters must be mentioned. The defendant contends that the plaintiff's case must fail because the complaint was not amended to incorporate the provisions of Exhibit M whereby the parties agreed to transfer their dispute from the property to the proceeds of its sale and Healthworks, Inc. the present owner of the property has not been made a party. The parties are at issue as to whether the defendant's answer is sufficient compliance with § 47-31 (d). And, finally, the plaintiff argues that the parol evidence rule precludes consideration of the oral testimony concerning Exhibit I, the written contract between Fairfield Associates III and the Bank Mart, and Exhibit J, the concurrently executed bill of sale from Fairfield Associates III to F. A. Wallingford III as nominee of The Bank Mart.
The court agrees with the defendant that the complaint should have been amended to incorporate the provisions of Exhibit M, an agreement between the present parties that is plainly relevant to the issue of who should be awarded the proceeds of the sale. Allowance of a post-trial amendment so that pleadings will conform to proof is a discretionary matter for the court. Voll v.Lafayette Bank Trust Co., 223 Conn. 419, 433 (1992); Within one week from receipt of this memorandum, the plaintiff will file an appropriate amendment to its complaint. And within one week thereafter, the defendant shall file a responsive answer. SeeSaphir v. Neustadt, 177 Conn. 191, 208 (1979).
Section 47-31 (d) requires a defendant in an action to settle title in real or personal property to state, in his answer, "whether or not he claims any . . . interest in . . . the property or any part of it, and, if so, the nature of the interest which he claims, and he shall set out the manner in which the . . . interest . . . is claimed to be derived." Lake Garda Improvement Assn. v.Battistoni, 158 Conn. 287, 295 (1967). In view of the defendant's CT Page 8090 execution of Exhibit M, the paucity of its answer is apparent. Under § 47-31, if a defendant claims no interest in the property affected, he ordinarily must so state in his answer and if he claims any interest, he ordinarily must describe it and the manner in which he acquired it in his answer.[1] Loewenberg v. Wallace,147 Conn. 689, 698 (1960).
It is possible, of course, that the plaintiff's failure to enlarge its complaint to include Exhibit M misled the defendant as to the statutory requirements for its answer. This case, however, was fully tried on its merits with the plaintiff relying on the agreement (Exhibit I) between Fairfield Associates III and The Bank Mart and the Bill of Sale (Exhibit J) from Fairfield Associates III to F. A. Wallingford, III, while the defendant asserted ownership based on the check from Fairfield Associates V to Corporate Physique Training Center, Inc. (Exhibit 2), an undocumented transfer, presumably from Fairfield Associates V, to it and its representation to the Wallingford Assessor. From an evidentiary standpoint the case accords with previous pronouncements from the Supreme Court. In controversies under § 47-31, the settled rule is that a party can prevail only on the strength of his own title as distinguished from the weakness of the title or interest of adversaries. Not only is this true for a plaintiff but also for a defendant, if he is to obtain an affirmative adjudication of any title or interest in himself. Loewenberg v. Wallace, supra at 698 99; see Marquis v. Drost, 155 Conn. 327, 334 (1967).
The parol evidence rule is not a rule of evidence but a substantive rule of contract law. Security Equities v. Giamba,210 Conn. 71, 78 (1989). When parties have put their agreement into writing without uncertainty as to object or extent, it is conclusively presumed that the entire agreement was reduced to writing. Oral testimony is not permitted for purposes of varying or contradicting the agreements TIE Communications, Inc. v. Kopp,218 Conn. 281, 288 (1991). The court agrees that the express integration clause in the agreement between Fairfield Associates III and The Bank Mart (Exhibit I) makes the parol evidence rule applicable to that document. But the court disagrees with the plaintiff's argument that parol evidence cannot be considered to explain why Schedule A was not attached to the contemporaneously executed bill of sale (Exhibit J) as the bill of sale recites. Id.supra at 288-89, Jay Realty, Inc. v. Ahearn DevelopmentCorporation, 189 Conn. 52, 56 (1983); Cohn v. Dunn, 111 Conn. 342,346-47 (1930). CT Page 8091
 III.
When properly analyzed, much of the dispute in this he relates to the activities of certain partnerships and the authority of their general partners. Until July 1, 1997, the statutory law of partnership in Connecticut is the Uniform Partnership Act (UPA) of 1914. General Statutes § 34-39; Public Act 95-344 § 58; 6 ULA 125. Section 34-47 (1) provides that:
 Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.
In construing this section as well as § 34-50,[2] the United States District Court described as basic partnership law that every partner is an agent of the partnership and that the knowledge of a partner regarding partnership affairs is imputed to all other partners. Prisco v. Westgate Entertainment, Inc., 799 F. Sup. 266,270 (D.Conn. 1992). "A partner as an agent of the partnership, normally binds the partnership by executing any instrument that carries on the business of the partnership. . . ."Connecticut National Bank v. Cooper, 232 Conn. 405, 416 (1995).
In this case where there are admissions of general partnerships and no claims of unauthorized actions by partners, the decisions cited above mean that partners, Penczer, Jarvis and Rowan had knowledge of and were bound by the action of partner Martin J. Ryan, Jr., when he acting on behalf of Fairfield Associates III acquired for this partnership the equipment from Corporate Physique Training Center, Inc. Similarly, partners Penczer, Jarvis and Rowan were bound by the action of partner Martin J. Ryan, Jr. when he signed the check of Fairfield Associates V in purported payment for the equipment. Parenthetically, since the reverse side of the check was never offered as an exhibit, there is no evidence that Corporate Physique Training Center, Inc. ever received and endorsed the check. And in like manner, partners Penczer, Jarvis and Rowan CT Page 8092 had knowledge of and became bound by the lease of the equipment given by Fairfield Associates III to Healthworks, Ltd. when, acting on behalf of the partnership, Martin J. Ryan, Jr., executed the leasing document.
Conceivably, a resulting trust in the equipment for the benefit of Fairfield Associates V on the basis of its payment could be claimed. A resulting trust will arise by operation of law when the purchase money for property is paid by one party and legal title to the property is taken in the name of another. Farrah v.Farrah, 187 Conn. 495, 500 (1982). A resulting trust is not, however, automatic in such situations. The presumed intent from which the law infers a trust may be rebutted by proof of a contrary intent. Cohen v. Cohen, 182 Conn. 193, 201 (1980); Lord v.Stavrakis, 6 Conn. App. 161, 162 cert. denied 199 Conn. 804 (1986).
For at least two reasons, an intent contrary to the formation of a resulting was established. See Farrah v. Farrah, supra at 501-03. First, no mention of a resulting trust came from the defendant. Second and more important, within two weeks after Fairfield Associates V supposedly transferred the equipment to the defendant, Fairfield Associates III, composed of the same individuals who are partners in Fairfield Associates V and who also are the officers, directors and shareholders of the defendant, leased the identical equipment to Healthworks, Ltd. All of these individuals, as partners, being again bound by the lease that Martin J. Ryan, Jr. signed on behalf of Fairfield Associates III.
To agree with the defendant's claim of an undocumented transfer from Fairfield associates V, the court would be required to accept the testimony of Peter Penczer and disregard all of the documentary evidence except the front side of the check. The trial court determines the credibility of witnesses, State v. Bonello,210 Conn. 51, 70 (1989) and, in this instance, finds Penczer to be less than credible. Particularly unimpressive, in light of his status as a lawyer and as a real estate developer, was the following response to the court's question of whether Fairfield Associates V received title to the equipment from Fairfield Associates III or from Corporate Physique Training Center, Inc.
 I don't know because that would be — this all occurred on the same day, your Honor. I don't know the legal consequences of the various things that happened. I went into a meeting — — someone went into a meeting, at least, a CT Page 8093 lease was terminated, a check was given and at the end of the meeting National Properties owned the property.
In similar vein was Penczer's self-serving act of reporting the equipment as the defendant's property to the Wallingford assessor at substantially less than actual value.
On the other hand, the subsequent transfer from Fairfield Associates III, the source of the plaintiff's claim of title is well-documented. The agreement (Exhibit I) whereby, on April 23, 1991, Fairfield Associates III agreed with The Bank Mart that the real estate and all personal property located at 6 Fairfield Boulevard would be surrendered was signed on behalf of the partnership by Peter Penczer and guaranteed by him, Jarvis, Ryan and Rowan. The bill of sale (Exhibit J) emanating from the agreement and executed on the same day was signed on behalf of Fairfield Associates III by John W. Jarvis and signed individually by him, Penczer and Ryan.
The bill of sale conveyed to F. A. Wallingford III "all personal property of [Fairfield Associates III] located on the property known as 6 Fairfield, Wallingford, Connecticut. In view of its broad language the court declines to accept Peter Penczer's explanation for the absence of schedule A. Moreover, since private documents are involved, the relationship of the reference to schedule A with the preceding language does not have to be explored under the rule of ejusdem generis. See State v. Russell, 218 Conn. 273,278 (1991).
Title passed from F.A. Wallingford III, the subsidiary of The Bank Mart, to the FDIC pursuant to 12 U.S.C. § 1821,[3] when the FDIC was appointed receiver for The Bank Mart. In the agreement (Exhibit M) that transferred the dispute to the proceeds of the sale of the equipment, the defendant acknowledged that the FDIC was the successor in interest to F.A. Wallingford III, the nominee of The Bank Mart to receive title to the equipment from Fairfield Associates III. By subsequent assignment, the interest of the F.D.I.C. was transferred to the plaintiff.
 IV
The plaintiff has proven its ownership of the fund representing the proceeds of the sale of the exercise equipment. Judgment, including taxable costs is rendered for the plaintiff. CT Page 8094
Jerrold H. Barnett, Judge