**Lisa MacKAY, Plaintiff,**

v.

**RAYONIER, INC. and John C. Swingle, Defendants.**

**Rayonier, Inc., Counterclaim Defendant,**

v.

**John C. Swingle, Counterclaim Plaintiff.**

Nos. CIV. 3:96CV1582(JBA), CIV. 3:96CV1872(JBA).

United States District Court, D. Connecticut.

July 8, 1999.

Kathryn Emmett, Christine A. Sparaco, Emmett & Glander, Stamford, CT, for Lisa MacKay, plaintiffs.

Carla R. Walworth, John W. Hamlin, Sarah Elizabeth Graves, Paul, Hastings, Janofsky & Walker, Stamford, CT, Karen L. Karpie, Robert J. Sickinger, Murphy & Karpie, Bridgeport, J. Alvin Leaphart, Leaphart & Johnson, Jesup, GA, for Rayonier, Inc., John C. Swingle, defendants.

*RULING ON COUNTERCLAIM DE-*
*FENDANT RAYONIER'S MOTION*
*FOR SUMMARY JUDGMENT*
*AGAINST COUNTERCLAIM*
*PLAINTIFF JOHN C. SWINGLE*
*[DOC. # 165]*

ARTERTON, District Judge.

Chaos theory hypothesizes that the beating of a butterfly's wings in China can cause a hurricane in the Caribbean. Rath-

er than a butterfly's wings, this case concerns a routine corporate transfer from Georgia to Connecticut that ultimately spawned a tempest of litigation. The current gust of activity brings before the Court the counterclaim defendant Rayonier's motion for summary judgment against counterclaim plaintiff John Swingle.

## Factual and Procedural Background

In December 1993, Swingle was transferred by his employer Rayonier from a vice president position in Jesup, Georgia to a vice president position in Stamford, Connecticut. In May 1995, Swingle invited a new employee in the Stamford Rayonier office, Lisa MacKay, to his home for dinner, where sexual relations occurred. Shortly afterwards, MacKay lodged a complaint with her employer, accusing Swingle of sexual assault. As part of its investigation of the incident, Rayonier requested that both Swingle and MacKay submit written statements detailing the chronological events of that night. In response to this request, Swingle submitted a 48–page handwritten statement describing in unseemly, graphic, and explicit detail his version of the incident, which he contends involved consensual sexual relations. After receiving the statements from Swingle and MacKay, and meeting several times with each separately, Rayonier informed Swingle on May 14, 1995 of his termination, with the option to resign, on the basis of his "poor judgment," and Rayonier's attendant loss of confidence in Swingle. Swingle chose not to resign, and his termination became permanent on June 13th.

As a result of the incident on the night of May 4, 1995, MacKay filed a lawsuit against Rayonier and Swingle, alleging various federal and state law causes of action. Approximately one month later, Rayonier instituted suit against Swingle. Swingle countered by filing a suit against Rayonier in the United States District Court for the Southern District of Georgia, which was transferred to the District of Connecticut, but subsequently dismissed without prejudice by Swingle's motion.

Swingle brought instead a five-count counterclaim against Rayonier, alleging breach of contract, violation of ERISA, negligent misrepresentation, breach of the covenant of good faith and fair dealing, and wrongful termination. The Court partially granted Rayonier's motion to dismiss counts two through five of the counterclaim, partially dismissing the ERISA claim, and dismissing the wrongful discharge claim. The Court later dismissed Rayonier's amended complaint against Swingle in its entirety. Rayonier, in its capacity as a counterclaim defendant, now moves for summary judgment against Swingle on the four remaining claims of his complaint.

## Legal Standard

Federal Rule of Civil Procedure 56(c) provides that a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Silver v. City University*, 947 F.2d 1021, 1022 (2d Cir.1991). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060 (2d Cir.1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988). A party seeking to defeat a summary judgment motion cannot "rely on mere speculation or conjecture as to the true nature of facts to overcome the motion." *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir.1995). Rather, the responding party "must show the existence of a disputed material fact in

light of the substantive law." *Peer Int'l Corp. v. Luna Records, Inc.*, 887 F.Supp. 560, 564 (S.D.N.Y.1995).

## Discussion

*Count One of Counterclaim: Breach of Contract*

Rayonier moves for summary judgment on the first counterclaim, breach of contract, on the grounds that the alleged employment agreement contains no "just cause" requirement for termination, and even assuming there were, just cause existed to fire Swingle. Swingle argues in opposition that the Court should look to parol evidence in order to interpret the written agreement between Rayonier and Swingle, and that such evidence shows that the intent of the parties to contract for employment for a term of at least three years.

Under Connecticut state law, contracts for permanent employment or employment for an indefinite term are terminable at the will of either party, whereas contracts for employment for a definite term may be terminable only for just cause. *See Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 474, 427 A.2d 385 (1980); *Coelho v. Posi–Seal Int'l, Inc.*, 208 Conn. 106, 118, 544 A.2d 170 (1988). The mere fact that the plaintiff believed he had a promise for long term employment is irrelevant unless the record demonstrates evidence from which the jury could reasonably find that the defendant intended to enter into a contract for a definite term. *See Christensen v. Bic Corp.*, 18 Conn.App. 451, 458, 558 A.2d 273 (1989). Swingle maintains that a December 3, 1993 letter written by John P. O'Grady, Vice President of Administration at Rayonier, constitutes a written contract for a term of three years. The three-page letter to Swingle contains the following:

> This is to confirm our conversation of December 2, 1993 concerning your promotion to Vice President, Pulp Manufacturing, reporting to W. Lee Nutter, Executive Vice President. The effective date of this action is December 13, 1993, or thereafter upon your acceptance of this offer, with complete family relocation to the Stamford area deferred to second quarter 1995. The starting salary for the Stamford-based executive salary grade 24 position will be at a biweekly rate of $6,038.46.

> In your new position, you will remain eligible for bonus consideration under the ITT Executive Bonus Program, as well as the standard ITT Rayonier Benefits Program, including the following:
>
> ITT Investment & Savings Plan for Salaried Employees
>
> ITT Employee Stock Ownership Plan
>
> ITT Retirement Plan for Salaried Employees
>
> ITT Salaried Medical and Dental Plan
>
> ITT Salaried Life Insurance Plan
>
> Life Plus Insurance Program
>
> ITT Rayonier Salaried Disability Plan
>
> ITT Rayonier Travel Accident Plan (on company business)
>
> ITT Rayonier Voluntary Group Accident Insurance Plan

> In consideration of your relocation tot he Stamford, Connecticut area from Jesup, Georgia, you will be entitled to the following relocation benefits to assist you in your move:

> 1. Two househunting trips and one real estate closing trip (if necessary) for you and your spouse, including economy airfare and actual and reasonable expenses.

> 2. Approved costs associated with the sale of your Jesup, Georgia residence, on a deferred basis as noted above, and the purchase of your residence in the Stamford, Connecticut area which is expected to be accomplished within the first quarter 1994.

> 3. Transportation of household goods, personal effects and hobby items to your new residence. This includes premove assistance, packing and unpacking as may be required. Storage is also available for a period of up to 90 days, if needed.

4. Shipment of two automobiles.

5. Economy airfare transportation for your family from Jesup, Georgia to the metropolitan New York area, in conjunction with their relocation to Connecticut.

6. Temporary living allowance for a period not to exceed 45 days following your initial move to the Stamford area.

7. A two-month base salary settling-in allowance, grossed up for income tax purposes, payable upon notice of closing of your Connecticut residence.

8. A three-year mortgage assistance support program with a company-sponsored allowance to be used solely for Connecticut mortgage interest payments, pursuant to the following schedule.

First year $25,000

Second year $15,000

Third year $10,000

9. Relocation income tax allowance, in accordance with ITT Rayonier policy and IRS regulations. As discussed, several of the above outlined relocation benefits constitute a major exception to company policy and are being made available to you on an exclusive and confidential basis. Other costs and accommodations associated with your relocation to Connecticut will be governed by ITT Rayonier policy.

The company understands the personal and professional difficulties associated with corporate transfers and relocations. We also recognize that many unforeseen problems may arise. It is our desire to minimize any disruptive factors and to effect as smooth a transition as possible to you new promotional assignment in Stamford. It is hoped that the array of relocation benefits being made available to you and your family will help ease some of the personal burden of moving. Nonetheless, please feel free to contact me directly should you need additional assistance or clarification relative to your move.

To acknowledge your acceptance of the terms and conditions of your promotion and relocation to Stamford, please sign one copy of this letter and return it to my attention, The other copy should be retained for your files.

John, on a more personal basis, I believe your acceptance of this promotional opportunity will prove to be a most satisfying decision in your continuing career with Rayonier.

(Countercl. Pl.'s Ex. 2; Countercl. Def.'s Ex. 1).

The Connecticut Supreme Court has explained that "[a] contract is to be construed as a whole and all relevant provisions will be considered together." *HLO Land Ownership Assoc. Ltd. v. City of Hartford*, 248 Conn. 350, 356, 727 A.2d 1260 (1999). In interpreting contract terms, the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and the

> language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter... Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity.

*Id.* at 357, 727 A.2d 1260. "[A]ny ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." *Levine v. Massey*, 232 Conn. 272, 279, 654 A.2d 737 (1995).

The parol evidence rule is not a rule of evidence, but a substantive rule of contract law. *See Security Equities v. Giamba*, 210 Conn. 71, 77–78, 553 A.2d 1135 (1989).

> The parol evidence rule does not of itself ... forbid the presentation of parol evidence, that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract.... By implication, such evi-

dence may still be admissible if relevant (1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement which does not vary the terms of the writing; (3) to add a missing term in a writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud.

*HLO Land Ownership*, 248 Conn. at 358, 727 A.2d 1260 (citing *Jay Realty, Inc. v. Ahearn Development Corp.*, 189 Conn. 52, 56, 453 A.2d 771 (1983)).

█ During an April 12, 1999 colloquy with the Court, Swingle's counsel, Alvin Leaphart, conceded in response to a direct inquiry by the Court that parol evidence was not necessary to interpret the contract at issue:

> The Court: Is there anything ambiguous about that contract that requires Mr. Gross's testimony or do you stand on the face of that contract and claim that the reasonable inferences from the terms in that contract were breached by his termination?
>
> Mr. Leaphart: Well, I stand on the face of the contract, your Honor.

(Tr. of Apr. 12, 1999 at 25 [doc. # 178]). Despite this assurance to the contrary, Swingle now claims that parol evidence is necessary to interpret the terms and give meaning to the intentions of the parties as to the December 3, 1993 letter. Specifically, Swingle has submitted a five-page affidavit describing conversations that took place between himself and Mr. O'Grady prior to his accepting the promotion to Stamford. (Countercl. Pl.'s Ex. 1). However, even if Swingle's representation to the Court should not held against him, the Court finds that the December 3, 1993 letter is an unambiguous and wholly integrated written agreement.

On its face, the O'Grady letter contains no express term of years of employment or "just cause" requirement. The letter indicates that it is a confirmation of a "conversation of December 2, 1993 concerning [Swingle's] promotion" and delineates the salary and bonus opportunities associated with that position. O'Grady's reference to the prior conversation supports Rayonier's position that the letter fully integrates all terms previously discussed. The item by item delineation of the salary, bonus programs, and the relocation benefits that Swingle is to receive makes it clear that the letter was intended to encompass all aspects of the understanding of the parties. Further, O'Grady's notation that "several of the above outlined relocation benefits constitute a major exception to company policy and are being made available to you on an exclusive and confidential basis," underscores the comprehensive nature of the letter; it includes both the standard terms of employment with Rayonier, as well as unusual, negotiated-for terms. Finally, the letter specifies that Swingle must sign a copy and return it O'Grady to accept "the terms and conditions of your promotion and relocation to Stamford," further indicating that the express purpose of the agreement is to state the benefits, terms, and conditions of the promotion and relocation in complete form.

The only term that even arguably suggests a contract of employment for a term of years is the provision offering "A three-year mortgage assistance support program." This term, however, which promises certain benefits incidental to employment, simply does not create a term of years. In the case of *Swihart v. Country Home Bakers, Inc.*, No. CV97060945, 1998 WL 867327 (Conn.Super. Dec. 3, 1998), the plaintiff alleged the existence of a written employment contract for a term of years. In terms comparable to the O'Grady letter, the alleged written contract offered

> the plaintiff a managerial position with the starting date to be determined by mutual agreement. This letter to the plaintiff hiring her then sets forth the amount of the bi-weekly salary and states the full bonus potential. It refers to a company relocation package and a variety of fringe benefits the plaintiff would be entitled to receive.... The letter concludes by saying that the cor-

porate official who sent it looks forward to her employment.

*Swihart,* 1998 WL 867327 at *10. Judge Corradino, in finding that the agreement did not constitute an employment contract for a term of years, explained that "There is no offer of a definite term of employment; the letter merely states the terms of compensation and bonuses and fringe benefits that may be earned during the course of employment." *Id.* at *11. The O'Grady letter similarly makes no offer of a definite term of employment, but rather states the benefits that may be earned during the course of employment. *See also Ambrosino v. Superior Plating Co.,* No. CV 94309952S, 1996 WL 571439 (Conn.Super. Sept.19, 1996) (Executive Incentive Plan did not contain promise for long term employment).

Even assuming for the sake of argument, however, that the mortgage assistance term in the letter is ambiguous, and thus susceptible to interpretation in light of parol evidence, the evidence that Swingle submits in support of his contention that he was hired for a term of years in no way aids in interpretation of the mortgage assistance provision. Swingle's claim is that prior to accepting the promotion, he expressed his concern that he only had three years of service before he could qualify for enhanced retirement benefits. He asserts in an affidavit that he

> informed Rayonier officials in Stamford, including the Senior Vice President, Administration, John P. O'Grady and Executive Vice President, Lee Nutter that he was wholly satisfied as the mill manager of the Jesup Mill, that he had only three years before he would have enough service time, along with policy benefits to qualify under the Rule of 80 (age plus years of service) to retire, and did not want to take a chance of losing his job while in Stamford, as he had seen happen to others, and lose his right to enhanced retirement benefits.
>
> Affiant was assured by the above company officers that such would not happen, after which Affiant entered into a written contract with Rayonier on De-

cember 3, 19993. The contract was for a term of three years and was offered to dispel Affiant's concerns about relocating to Connecticut.

(Countercl. Pl.'s Ex. 1, ¶¶ 5–6). Rather than aid in interpreting the existing terms of the written agreement, however, Swingle attempts to add a new term that is not in located anywhere in the agreement. While parol evidence may be used to "add a missing term in a writing which indicates on its face that it does not set forth the complete agreement," 248 Conn. at 359, 727 A.2d 1260, nothing on the face of this agreement provides any indication that it is not complete. Moreover, Swingle has consistently plead this counterclaim as breach of a written contract. Nowhere has he articulated a cause of action for breach of an oral contract, or for breach of contract under a theory of promissory estoppel, such that the Court is required to examine whether the alleged oral statements made to Swingle created any kind of obligation to him. *See, e.g., D'Ulisse–Cupo v. Board of Directors of Notre Dame High School,* 202 Conn. 206, 520 A.2d 217 (1987).

Accordingly, the Court finds that the December 3, 1993 letter is an unambiguous, integrated agreement that contains no term of years or other measure of definite duration of employment. Without such a term or an explicit provision limiting reasons for termination to just cause, Swingle was no more than an at-will employee, and subject to termination for any or no reason. Rayonier's motion for summary judgment as to Swingle first counterclaim, breach of contract, is therefore GRANTED.

*Count Two of Counterclaim: Violation of ERISA*

█ In the second count of Swingle's counterclaim, he alleges that the true reason for the termination was to deprive him of retirement benefits in violation of § 510 of ERISA, 29 U.S.C. § 1140. Swingle neither opposes Rayonier's motion for summary judgment on this count in his memorandum in opposition, nor offers a single

exhibit raising a reasonable inference that Rayonier intended to deprive Swingle of his ERISA benefits in violation of § 510. If the summary judgment movant demonstrates an absence of material issues of fact, a limited burden of production shifts to the non-movant, who must "demonstrate more than 'some metaphysical doubt as to the material facts, ... [and] must come forward with specific facts showing that there is a genuine issue for trial.'" *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993) (citations and emphasis omitted). In response to Rayonier's initial showing that the reason for Swingle's termination was poor judgment in relation to the incident involving MacKay, Swingle has utterly failed to come forward with any specific facts showing that a genuine issue of material fact exists that deprivation of his ERISA benefits was the real motivation behind the firing. Accordingly, Rayonier's motion for summary judgment is GRANTED as to count two of the counterclaim, for violation of § 510 of ERISA.

*Count Three of Counterclaim: Negligent Misrepresentation*

■ Swingle alleges in the third count of his counterclaim that Rayonier negligently misrepresented to him that he would hold the position of Vice President for Pulp Manufacturing in Stamford for at least three years in order to enable him to retire with enhanced benefits. A claim for negligent misrepresentation is actionable even for an innocent misrepresentation of fact if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth. *See D'Ulisse–Cupo*, 202 Conn. at 217, 520 A.2d 217.

■ Swingle has submitted no evidence that the representation made to him before he accepted the Stamford position regarding the length of his position was in anyway untrue at the time of its making, or that Rayonier had the means of knowing, ought to have known or had the duty to know differently than represented. In the absence of any showing that there is a genuine issue of fact on the subject of whether Rayonier knew, had the means of knowing, ought to have known, or had the duty of knowing that Swingle would not hold his Stamford position for three years and become eligible for his hoped-for retirement benefits, Rayonier's motion for summary judgment as to count three of the counterclaim is GRANTED.

*Count Four of Counterclaim: Breach of the Implied Covenant of Good Faith and Fair Dealing*

Lastly, Swingle alleges that Rayonier terminated him in violation of the implied covenant of good faith and fair dealing. In *Magnan v. Anaconda*, 193 Conn. 558, 479 A.2d 781 (1984), the Connecticut Supreme Court "declin[ed] the invitation of the plaintiff to transform the requirement of good faith into an implied condition that an employee may be dismissed only for good cause." 193 Conn. at 571, 479 A.2d 781. Rather, the Connecticut Supreme Court explained that it would not "enlarge the circumstances under which an at-will employee may successfully challenge his dismissal beyond the situation where the reason for his discharge involves 'impropriety ... derived from some important violation of public policy.'" *Id.* at 572, 479 A.2d 781 (quoting *Sheets v. Teddy's Frosted Foods*, 179 Conn. at 475, 427 A.2d 385).

Previously, Swingle has pled his count of breach of the implied covenant as deriving from his breach of contract claim. Specifically, he alleges that the implied covenant was breached by Rayonier's "terminating the Defendant's employment for the stated reason, i.e., exercising poor judgment, when the Defendant had not violated any stated company rules or policies." (Countercl. at ¶ 35). Swingle now raises for the first time the argument that Rayonier breached the covenant by terminating him in violation of an important public policy in that his actions with regard to MacKay constituted activities protected by the concepts of freedom of speech and freedom of association, and thus his termination violated the important public policies articu-

lated in the First Amendment. Swingle's failure to plead a violation of public policy is by itself reason to decline to consider his argument at this late stage of the proceedings, however Swingle's claim also fails for other reasons.

First of all, Connecticut General Statute § 31–51q explicitly prohibits employers from disciplining or discharging an employee for exercising rights protected by the First Amendment to the United States Constitution. This statutory provision provides its own remedy and stands alone as a right that Swingle could have asserted but did not. However,

> [w]here the legislature has already provided remedial relief as to certain types of claims common law courts should not develop judicially conceived public policy exceptions to at will termination randomly going beyond the relief provided by statute. If there is a statutory remedy already provided it cannot be said "that permitting the discharge to go unredressed would leave a valuable social policy . . . unvindicated."

*Swihart,* 1998 WL 867327 at *5 (quoting *Wehr v. Burroughs Corp.,* 438 F.Supp. 1052, 1054 (E.D.Pa.1977), cited in *Atkins v. Bridgeport Hydraulic Co.,* 5 Conn.App. 643, 648, 501 A.2d 1223 (1985)).

 Moreover, even if this Court were to entertain parallel causes of actions under § 31–51q and the implied covenant of good faith and fair dealing, Swingle would have to demonstrate that: (1) he was exercising rights protected by the First Amendment to the United States Constitution or by an equivalent provision of the Connecticut Constitution; (2) he was fired "on account of" the exercise of such rights; and (3) his exercise of First Amendment or equivalent state constitutional rights did not substantially or materially interfere with bona fide job performance or with the working relationship with his employer. Further, an employee's statements are not constitutionally protected, and correspondingly not protected under § 31–51q, when they relate exclusively to matters concerning the employee's personal interests, as opposed to matters of public concern. *See Urashka v. Griffin Hospital,* 841 F.Supp. 468, 473 (D.Conn.1994); *Schnabel v. Tyler,* 230 Conn. 735, 749–50, 646 A.2d 152 (1994). Moreover, it is only in the rare instance in which an intimate relationship also contains expressive content that such relationships are protected by the First Amendment, as opposed to the Fourteenth Amendment. *See Winik–Nystrup v. Manufacturers Life Ins. Co.,* 8 F.Supp.2d 157, 159 (D.Conn.1998). Far from demonstrating that there is a genuine issue of material fact on any of these required elements, Swingle has failed to even allege such facts in his counterclaim. Inasmuch as Swingle has come forward with no evidence by which a reasonable factfinder could infer the existence of disputed material fact as to whether he was terminated in violation of his First Amendment rights, he also cannot show that Rayonier violated the implied covenant of good faith and fair dealing by firing him in violation of any important public policy. Rayonier's motion for summary judgment on count four of Swingle's counterclaim is therefore GRANTED.

### Conclusion

For the foregoing reasons, counterclaim defendant Rayonier's Motion for Summary Judgment [doc. # 165] against counterclaim plaintiff Swingle is GRANTED.

The Clerk is directed to close case 3:96cv1872 (JBA) only.

IT IS SO ORDERED.