HAROLD COHN & COMPANY, INC., ET AL. *v.* HARCO
INTERNATIONAL, LLC, ET AL.
(AC 22093)

Foti, Mihalakos and Bishop, Js.

Argued June 6—officially released September 3, 2002

*John H. Lindsay*, for the appellants (defendants).

*Christopher J. McCarthy*, for the appellees (plaintiffs).

*Opinion*

FOTI, J. The defendants, Harco International, LLC (Harco), and Christopher Komondy, appeal from the judgment of the trial court rendered in favor of the plaintiffs, Harold Cohn and Company, Inc. (Cohn), Prairie Dog Trading Company, Inc. (Prairie Dog), and Robert W. Dickerson. On appeal, the defendants claim that the court improperly (1) admitted evidence in violation of the parol evidence rule and (2) found that the

plaintiffs had proven fraud in the inducement. We affirm the judgment of the trial court.

The court found the following facts. At all times relevant, Dickerson was the president of both Cohn and Prairie Dog. Cohn manufactures and sells supplies for stamp and coin hobbyists. In 1997, Cohn conducted its business from leased premises in Wisconsin. In November of that year, Dickerson was diagnosed with liver cancer and given a prognosis of six months to live. At that time, Dickerson owed past due rent payments. He decided to sell Cohn.

In January, 1998, Komondy, who was in the business of buying and liquidating distressed businesses, learned of Dickerson's problems and contacted him. During the next two months, they negotiated the sale of Cohn's assets.

On April 4, 1998, Komondy and Dickerson met at Cohn's Wisconsin factory so that Komondy could inspect the factory and its contents. On April 15, 1998, the parties agreed on a purchase price of $160,000. The following day, Komondy contacted the Hartford economic development commission (commission). The commission, among other things, funded businesses that wanted to expand in Connecticut by offering them state-backed loans for that purpose. At the time that he agreed to purchase Cohn, Komondy needed additional capital for the purchase and wanted to acquire that capital by means of a state-backed loan.

Thereafter, between April and July of 1998, Komondy formed Harco, a Connecticut limited liability company, for the sole purpose of transacting the Cohn purchase. Komondy was the sole member of Harco. On July 18, 1998, Komondy spoke with Dickerson. He informed Dickerson that he would travel to Dickerson's home in Texas with two promissory notes totaling $160,000 and a bill of sale.

On July 21, 1998, Komondy submitted a preapplication form to the commission in which he sought a loan of $290,000 to buy and operate the business. On that form, he listed the cost of machinery and equipment as $175,000. Komondy declared that he had supplied true and correct information on the application. Together with his request, Komondy submitted information, including photographs of Cohn's assets, as well as Cohn's past tax returns. Komondy failed to provide other information, including a business plan, projected financial statements and balance sheets, which were required by the commission.

On July 22, 1998, Komondy traveled to Texas. Prior to the meeting, Komondy and Dickerson had agreed that Komondy would bring two promissory notes, one for $120,000 and one for $40,000. When Komondy arrived, he presented Dickerson with one note for $120,000, payable when Harco received a loan from the commission. Instead of presenting Dickerson with a second note for $40,000, however, Komondy presented him with a "consulting agreement." By means of that agreement, Komondy agreed to compensate Prairie Dog in the amount of $40,000 in exchange for Prairie Dog's assistance in operating the business and for consulting in a number of regards. The agreement further provided that it would last for three years and that Komondy would pay Prairie Dog $1000 per month, with a $4000 bonus at the end of the agreement's term.

The agreement surprised both Dickerson and his wife, Carol Dickerson, who was at the meeting. Dickerson and his wife reminded Komondy of Dickerson's illness and prognosis. Komondy assured them that the agreement merely was for bookkeeping purposes to allow him to make partial payments over time. He also told them that he had obtained the state-backed loan from the commission and that it would be processed once he submitted the signed documents. He further

stated that the loan would be processed in two weeks and that he would pay the promissory note at that time. When asked what would happen if the loan did not receive final approval, Komondy stated that he had enough resources to pay the purchase price. Dickerson signed the bill of sale, the promissory note and the consulting agreement. He would not have done so, however, were it not for Komondy's representations.

The commission did not approve Komondy's loan application. Komondy never paid the purchase price for Cohn. After the purchase was transacted, Dickerson entered into an oral agreement to travel to Wisconsin and assist Komondy in operating the business. Dickerson began treatment for his illness and was able to fulfill the agreement by working with Komondy for eight months. Komondy paid Dickerson for his services. Thereafter, the plaintiffs brought this action sounding in breach of contract, fraudulent inducement, unjust enrichment, breach of the covenant of good faith and fair dealing, and for violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.

The court concluded that the defendants had committed fraudulent inducement and that they both were liable for the plaintiffs' injuries. The court further found that the defendants had violated CUTPA, but declined to award punitive damages or attorney's fees to the plaintiffs. The court awarded the plaintiffs $151,907.49 in damages after allowing a total setoff of $8092.51.[1] This appeal followed.

I

The defendants first claim that the court improperly admitted certain portions of Dickerson's testimony in violation of the parol evidence rule. We disagree.

---

[1] By permitting the plaintiffs to recover on the contract after finding fraudulent inducement, the court obviated the need to consider the other causes of action pleaded by the plaintiffs.

Dickerson testified that the parties had agreed on a purchase price of $160,000 for Cohn's assets. The defendants argue that the written contract contained a purchase price of $120,000 and that the contract, which contained a merger clause, was fully integrated. The defendants further argue that Dickerson's testimony in that regard, which varied the terms of the written agreement, was inadmissible.[2]

We first set forth our standard of review. Ordinarily, "[o]n appeal, the trial court's rulings on the admissibility of evidence are accorded great deference. . . . Rulings on such matters will be disturbed only upon a showing of clear abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Jurgensen*, 42 Conn. App. 751, 754, 681 A.2d 981, cert. denied, 239 Conn. 931, 683 A.2d 398 (1996).

Because the parol evidence rule is not an exclusionary rule of evidence, however, but a rule of substantive contract law; *Security Equities* v. *Giamba*, 210 Conn. 71, 78, 553 A.2d 1135 (1989); *Damora* v. *Christ-Janer*, 184 Conn. 109, 113, 441 A.2d 61 (1981); the defendants' claim involves a question of law to which we afford plenary review.

The parol evidence rule is one "premised upon the idea that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony . . . to learn what was intended, or to contradict what

---

[2] The defendants argue that had the court excluded that testimony, it would have rendered a judgment for the plaintiffs, if at all, of no greater than $120,000, less setoffs.

is written, would be dangerous and unjust in the extreme. . . .

"The parol evidence rule does not of itself, therefore, forbid the presentation of parol evidence, that is, evidence outside the four corners of the contract concerning matters covered by an integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract. Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant. When offered for that purpose, it is inadmissible not because it is parol evidence, but because it is irrelevant. By implication, such evidence may still be admissible if relevant . . . to show mistake or fraud. . . . [This] recognized [exception is] of course, only [an example] of [a situation] where the evidence (1) does not vary or contradict the contract's terms, (2) may be considered because the contract has been shown not to be integrated; or (3) tends to show that the contract should be defeated or altered on the equitable ground that relief can be had against any deed or contract in writing founded in mistake or fraud." (Citations omitted; internal quotation marks omitted.) *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 780–81, 653 A.2d 122 (1995).

Fraud vitiates all contracts, written or otherwise; no rule of law, including the parol evidence rule, deprives a trial court of the power to allow oral testimony to prove fraud.[3] See *Presta* v. *Monnier*, 145 Conn. 694, 700, 146 A.2d 404 (1958).

A defrauded party has the option of seeking rescission or enforcement of the contract and damages.

---

[3] The defendants argue in their reply brief that there are "no exceptions" to the parol evidence rule. Even if we were to agree with that representation, we might conclude as we have by determining that the parol evidence rule does not apply when fraud in the inducement of the contract is pleaded and proven.

"Fraud in the inducement of a contract ordinarily renders the contract merely voidable at the option of the defrauded party, who also has the choice of affirming the contract and suing for damages. . . . If he pursues the latter alternative, the contract remains in force . . . ." (Citation omitted.) *A. Sangivanni & Sons* v. *F. M. Floryan & Co.*, 158 Conn. 467, 472, 262 A.2d 159 (1969).

In light of the claims before the court, it properly admitted Dickerson's parol evidence for the purpose of demonstrating the defendants' fraudulent inducement. The plaintiffs' attorney clearly sought the admission of that testimony on such ground. The court was free to consider and to accept as true Dickerson's testimony in that regard because the misrepresentation proven thereby undermined the agreement's validity in the first instance. That evidence tended to demonstrate that Komondy fraudulently misrepresented the terms of the agreement to Dickerson. We further conclude that the court's findings of fact relative to Dickerson's testimony are not clearly erroneous. We do not retry the matter or evaluate the credibility of the witnesses, but must defer to the trier of fact who has had firsthand observation of the conduct, demeanor and attitude of those witnesses. See *State* v. *McClam*, 44 Conn. App. 198, 208, 689 A.2d 475, cert. denied, 240 Conn. 912, 690 A.2d 400 (1997).

## II

The defendants next claim that the court improperly found that the plaintiffs had proved fraud in the inducement of the contract. We disagree.

"Fraud and misrepresentation cannot be easily defined because they can be accomplished in so many different ways. They present, however, issues of fact. . . . The trier of facts is the judge of the credibility of the testimony and of the weight to be accorded it."

(Citation omitted; internal quotation marks omitted.) *Maturo* v. *Gerard*, 196 Conn. 584, 587–88, 494 A.2d 1199 (1985). When the trial court finds that a plaintiff has proven all of the essential elements of fraud, its decision "will not be reversed or modified unless it is clearly erroneous in light of the evidence and the pleadings in the record as a whole." *Miller* v. *Appleby*, 183 Conn. 51, 55, 438 A.2d 811 (1981). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 70, 699 A.2d 101 (1997).

"The essential elements of a cause of action in fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. . . . All of these ingredients must be found to exist; and the absence of any one of them is fatal to a recovery. . . . Additionally, [t]he party asserting such a cause of action must prove the existence of the first three of [the] elements by a standard higher than the usual fair preponderance of the evidence, which higher standard we have described as clear and satisfactory or clear, precise and unequivocal." (Citations omitted; internal quotation marks omitted.) *Citino* v. *Redevelopment Agency*, 51 Conn. App. 262, 275–76, 721 A.2d 1197 (1998).

As to the first element of fraud, the court specifically found by clear and satisfactory evidence that Komondy had stated that (1) he had obtained the state-backed loan, (2) the consulting agreement was for bookkeeping

purposes only and (3) even without the state-backed loan, he still would be able to purchase Cohn.

As to the second element of fraud, the court found by clear and satisfactory evidence that Komondy knew that those representations of fact were untrue. The court noted that Komondy himself testified that he never had secured the state backed loan. Komondy also testified that he intended to uphold the consulting agreement with Dickerson, thereby demonstrating that he did not believe that it was solely for bookkeeping purposes. Finally, the court found that Komondy "either never intended to use his personal assets [to purchase Cohn] or that he did not have enough assets to do so."

As to the third element of fraud, the court found that Dickerson would not have signed the documents but for Komondy's false statements of fact. In reaching its decision, the court considered the testimony of Dickerson and his wife that they had originally "balked at the idea of the consulting agreement" and that Komondy had made false promises to assuage their concerns. The court specifically stated that it did not find credible, and that the evidence did not support, Komondy's testimony that Dickerson wanted Komondy to buy the company and "worry about the payment later."

Finally, the court found that Dickerson had acted on the false representations to his injury. In support of its finding, the court cited to Komondy's testimony that after the parties had signed the sale documents, all of Cohn's assets, except one machine, were moved from Wisconsin to Connecticut. The evidence further showed that the plaintiffs received only $1000 of the agreed on purchase price for the assets.

The defendants concede in their principal brief that "[t]his is an issue of fact, and review is limited to clear error." The defendants argue, however, that "[t]he [trial] transcript is replete with contradictory testimony," and

"[i]n light of the extremely high burden of proof, the trial court erroneously found that fraud had been committed by the defendants." We disagree.

We conclude that the plaintiffs proved by clear and satisfactory evidence all four of the elements needed to establish their claim of fraudulent inducement. The court's findings of fact are not clearly erroneous. Each of the court's subordinate findings in regard to Komondy's fraudulent representations and Dickerson's reliance thereon to his detriment were clearly, precisely and unequivocally supported by clear and satisfactory evidence adduced at trial. The court's ultimate legal conclusion on the basis of those subordinate facts found was legally and logically correct.

The judgment is affirmed.

In this opinion the other judges concurred.