SHIRLEY FERRIS, COMMISSIONER OF
AGRICULTURE *v.* ANTON
FAFORD ET AL.
(AC 25145)

Flynn, Bishop and Harper, Js.*

---

*The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued October 26, 2005—officially released February 14, 2006

*John K. Harris, Jr.*, for the appellants (defendants).

*John M. Looney*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (plaintiff).

*Nicholas F. Kepple*, town attorney, for the appellee (intervening plaintiff).

*Opinion*

BISHOP, J. The defendants[1] appeal from the judgment of the trial court ordering the opening and setting aside of the decrees of the Probate Court for the district of Eastford, which had admitted and probated a will of Mamie Nahibowitz that devised her property to the defendants.[2] On appeal, the defendants claim that the court (1) abused its discretion in admitting into evidence a certain affidavit under the residual exception to the hearsay rule, (2) improperly held that the decedent's 1993 will was lost and not revoked, and (3) improperly held that the decrees issued by the Probate Court were

[1] This cause of action seeking declaratory relief was brought against Anton Faford, Joan Glass, Richard Glass, Geoffrey Glass, Kerri Nelson, Joan Piller and Timothy Faford by the plaintiff, Shirley Ferris, the commissioner of agriculture. The town of Eastford sought and was granted intervenor status and, on appeal, has adopted the plaintiff's brief.

[2] The Probate Court issued three decrees. The first decree, which issued on April 9, 1998, granted the probate of the 1973 will. The second and third decrees, which issued on July 23, 1999, ordered the distribution of the real property in the estate in accordance with the 1973 will and conveyed the farmland at issue without restrictions to the defendants.

the result of fraud, negligence or mistake. We affirm the judgment of the trial court.

The following facts and procedural history, as set forth by the court in its memorandum of decision, are relevant to the defendants' appeal. "In June, 2002, the state of Connecticut, acting through its commissioner of the department of agriculture [(commissioner)], filed this action against Anton Faford, Joan Glass, Richard Glass, Geoffrey Glass, Kerri Nelson, Joan Piller and Timothy Faford. The [commissioner] claimed, in a three count complaint, that Anton Faford fraudulently, negligently or by mistake failed to offer for probate a June 3, 1993 will of . . . Nahibowitz and instead offered a 1973 will of the decedent. The remaining defendants are the beneficiaries of the estate of . . . Nahibowitz under the 1973 will. In the 1993 will, the decedent left her farmland to the defendants, but restricted the development of the property to solely agricultural uses. In contrast, the 1973 will of . . . Nahibowitz left the farmland to the defendants free of any restrictions on its development. . . .

"Nahibowitz died on February 14, 1998. On March 21, 1998, Anton Faford applied for the probate of the last will and testament of . . . Nahibowitz. He filed with the Probate Court for the town of Eastford a will executed by . . . Nahibowitz on October 27, 1973. The 1973 will left her estate in quarter shares to Anton Faford (nephew), Joan Glass (niece), the then living children of Joan Glass and the then living children of Anton Faford. The primary asset of the estate was 127.5 acres of farmland. There was no restriction placed on the development of that land. The will was admitted into probate. On July 23, 1999 the Probate Court ordered a distribution of the real property in the estate in accordance with the directions of the 1973 will. On April 9, 1998, the Probate Court issued a decree granting the probate of the 1973 will. On July 23, 1999, the Probate

Court issued a certificate of devise conveying the farm-land, without restrictions, to the defendants.

"The [commissioner] claimed that [she] first became aware of the probating of the 1973 will in the spring of 2002. [She] filed this litigation in September, 2002. In essence, the [commissioner] alleged that Anton Faford knew of a later will that restricted the development of . . . Nahibowitz' farmland and chose not to offer the 1993 will because it decreased the value of the inheri-tance, that he was negligent in filing for probate the 1973 will when he reasonably knew or should have known of the 1993 will or that he mistakenly offered the 1973 will for probate . . . [and sought] a judgment setting aside the decrees issued by the Probate Court for the district of Eastford relating to the 1973 will and further orders as required by equity." Additional facts will be set forth as necessary.

## I

The defendants first claim that the court abused its discretion in admitting into evidence a certain affidavit under the residual exception to the hearsay rule. Specif-ically, they argue that the court abused its discretion when it admitted into evidence the affidavit of Henrietta Klee (Etta Klee), pursuant to § 8-9 of the Connecticut Code of Evidence. The defendants claim that the affida-vit should not have been received into evidence over their objection because (1) there was no reasonable necessity for the affidavit, and (2) the affidavit was untrustworthy and unreliable.[3] We are not persuaded.

---

[3] The defendants also assert that this evidentiary ruling impermissibly infringed on their rights under the confrontation clause of the sixth amend-ment. Because we hold that the evidence was admitted properly under the residual exception to the hearsay rule, we need not address that issue, but note that in this civil case, recourse to the residual exception does not implicate the confrontation clause contained in the United States constitu-tion or the Connecticut constitution. See *Doe* v. *Thames Valley Council for Community Action, Inc.*, 69 Conn. App. 850, 854, 797 A.2d 1146, cert. denied, 261 Conn. 906, 804 A.2d 212 (2002).

The following additional facts are necessary for our disposition of the defendants' claim. At the time of trial, the whereabouts of the original 1993 will of Nahibowitz was unknown, although a copy of an unsigned version of the 1993 will was produced by Nahibowitz' attorney, Thomas A. Borner. To assist the court in determining whether the 1993 will was revoked or lost, the commissioner sought to introduce the affidavit of Etta Klee, Nahibowitz' closest friend, under the residual exception to the hearsay rule. Etta Klee was unavailable to testify at trial because she suffered a stroke after the affidavit was taken, which left her paralyzed on one side of her body. Absent the affidavit of Etta Klee, there was no evidence at trial that could account for the 1993 will.

The defendants objected to the introduction of the affidavit on the grounds that the statement contained in the affidavit was hearsay that was not within any exception to the hearsay rule because "there was no indication that Mrs. Klee prepared the affidavit" and that the affiant should have been deposed. The defendants also argued that the statement did not fall within the residual exception because nothing in the record established that the statements contained in the affidavit were reliable. The commissioner disagreed and sought to establish the reliability of the affidavit through the testimony of Felix Klee, the son of Etta Klee.

Felix Klee testified that the first selectman from the town of Eastford had contacted Etta Klee to discuss the 1993 will sometime in March, 2002. He testified that he had attended the meeting with his father, Emil Klee, because he "wanted to make sure that everyone was polite and objective." He stated that the town officials "asked straightforward questions . . . asked for descriptions of activities, and then they questioned parts of the descriptions that , . . weren't clear." He further testified that at the time of the meeting, his mother "had a good memory [and was] . . . very artic-

ulate . . . [and] extremely honest." Although the affidavit was not executed on the day of the meeting, Felix Klee testified that after the town officials had prepared the affidavit, they returned on another day to have Etta Klee review and sign it. Felix Klee stated that between March, 2002, when the affidavit was taken, and November, 2002, when his mother had a stroke, she was in good health and that her stroke was unexpected.

Felix Klee stated that his mother, who was eighty-four years old when the affidavit was signed, was unavailable to testify because the stroke that she had suffered caused her to be paralyzed on her right side. He further testified that "from day to day [his mother] is quite aware of her surroundings or not very aware of her surroundings . . . probably 50 percent aware." When asked by the commissioner's counsel whether his mother would be able to respond to questions in court, he stated that he did not "think she could do it well enough that [one] could believe what she was saying."

The court overruled the defendants' objection to the affidavit and allowed its admission on the grounds that there was a reasonable necessity for the affidavit because the affiant was unavailable due to a medical condition, the affidavit contained information related to the whereabouts of the 1993 will, and the affidavit was trustworthy because the statement was taken under oath and, during the interview, the affiant's son was present and testified that there was no undue influence or coercion.

In assessing that claim, we first note our familiar standard of review for challenges to evidentiary rulings. "It is well settled that the trial court's evidentiary rulings are entitled to great deference. . . . The trial court is given broad latitude in ruling on the admissibility of evidence, and we will not disturb such a ruling unless

it is shown that the ruling amounted to an abuse of discretion." (Internal quotation marks omitted.) *Trinity United Methodist Church of Springfield, Massachusetts* v. *Levesque*, 88 Conn. App. 661, 667–68, 870 A.2d 1116, cert. denied, 274 Conn. 907, 908, 876 A.2d 1200 (2005).

"A statement that is not admissible under any of the [hearsay] exceptions [enumerated in the Connecticut Code of Evidence] is admissible if the court determines that (1) there is a reasonable necessity for the admission of the statement, and (2) the statement is supported by equivalent guarantees of trustworthiness and reliability that are essential to other evidence admitted under traditional exceptions to the hearsay rule." (Internal quotation marks omitted.) *State* v. *Merriam*, 264 Conn. 617, 633 n.22, 835 A.2d 895 (2003), quoting Conn. Code Evid. § 8-9. "Reasonable necessity may be established by showing that unless the hearsay statement is admitted, the facts it contains may be lost, either because the declarant is dead or otherwise unavailable, or because the assertion is of such a nature that evidence of the same value cannot be obtained from the same or other sources." (Internal quotation marks omitted.) *State* v. *Merriam*, supra, 633 n.21.

As to the evaluation of the trustworthiness of an affidavit, our Supreme Court has held that "[t]he second prong, reliability, is met in a variety of situations, one of which is when the circumstances are such that a sincere and accurate statement would naturally be uttered, and no plan of falsification be formed. . . . At minimum, the statement must independently bear adequate indicia of reliability to afford the trier of fact a satisfactory basis for evaluating [its] truth . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Hines*, 243 Conn. 796, 810, 709 A.2d 522 (1998).

In light of Etta Klee's physical disability and her uncertain mental state at the time of the trial, we con-

clude that the court properly held that she was unavailable as a witness. There also was a reasonable necessity for the affidavit because the affidavit contained information as to the whereabouts of the missing 1993 will, for which no other evidence introduced at trial could account. We further conclude that the document had an adequate indicia of reliability because there was no evidence of undue influence or coercion, no evidence of a motive to fabricate the affidavit, and Etta Klee had sworn to its accuracy.

The defendants next argue that the commissioner should not have been allowed to introduce the affidavit because she failed to exercise due diligence by failing to take Etta Klee's deposition when the commissioner knew or should have known that in light of Etta Klee's age, she would be unavailable as a witness at the time of trial. The commissioner contends, on the other hand, that because Etta Klee was in good health at the time the affidavit was taken, it was reasonable to assume that she would be available as a witness at trial or, if necessary, that her deposition could be taken at a later date.

Our Supreme Court previously has held that "[t]o take advantage of the hearsay exceptions requiring unavailability, the proponent must show a good faith, genuine effort to procure the declarant's attendance by process or other reasonable means. . . . This showing necessarily requires substantial diligence." (Citations omitted; internal quotation marks omitted.) *State* v. *Lopez*, 239 Conn. 56, 75, 681 A.2d 950 (1996).

Nevertheless, "[d]ue diligence does not require omniscience. Due diligence means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) *Terracino* v. *Fairway Asset Management, Inc.*, 75 Conn. App. 63, 77, 815 A.2d 157, cert. denied, 263 Conn. 920, 822 A.2d 245 (2003). "The trial

court has broad discretion in determining whether the proponent has shown a declarant to be unavailable. A trial court's determination of the unavailability of a witness will be overturned only if there has been a clear abuse of discretion." *State* v. *Lapointe*, 237 Conn. 694, 738, 678 A.2d 942, cert. denied, 519 U.S. 994, 117 S. Ct. 484, 136 L. Ed. 2d 378 (1996).

The court did not abuse its discretion in finding Etta Klee to be unavailable due to physical illness. The unrefuted evidence at trial was that although she was eighty-four years old at the time she signed the affidavit, Etta Klee was healthy, and her subsequent stroke was unexpected. Although it was *possible* to take Etta Klee's deposition sometime after she signed the affidavit in March, 2002, and before her stroke in November, 2002, the commissioner reasonably expected that she would be able to depose Etta Klee at a later time or that Etta Klee would be available to testify at the time of trial. Nothing in the record supports the inference that the commissioner's failure to procure Etta Klee's deposition before trial constituted a lack of substantial diligence or good faith.

II

Next, the defendants claim that the court improperly held that the decedent's 1993 will was lost and not revoked. We disagree.

The following additional facts are relevant to our disposition of the defendants' claim. On the same day in March, 1993, that Nahibowitz executed the 1993 will, Etta Klee took her to Putnam Savings Bank to acquire a safe deposit box to store the 1993 will. In May, 1993, Anton Faford contacted Borner's office to set up an appointment to fix a typographical error in Nahibowitz' 1993 will. On June 3, 1993, Nahibowitz returned to Borner's office with Anton Faford to fix the typographical error in her 1993 will. Nahibowitz took the signed

version of the amended 1993 will and left an unsigned copy in Borner's office.

Etta Klee stated in her affidavit that sometime later she took Nahibowitz back to Putnam Savings Bank, where they met with Nahibowitz' sister, Nadgy Faford, and Nadgy Faford's daughter-in-law. Etta Klee recalled that "[t]he bank staff assisted in retrieving [Nahibowitz'] will, which was examined by Nadgy [Faford]. The safe deposit box was returned to the vault without the will being returned to it [and Nadgy Faford was] holding onto the will. . . . Nadgy [Faford] said 'We'll put it in our box.' " By "our box," Nadgy Faford was referring to a safe deposit box that she and Nahibowitz shared. On June 26, 1993, Nahibowitz' health failed, and she was transported to the Evangelical Baptist Home, where she remained until her death in February, 1998.

Nadgy Faford predeceased Nahibowitz, and Anton Faford was the executor of the estate of his mother, Nadgy Faford. Anton Faford also served as the conservator for Nadgy Faford and Nahibowitz, and as the administrator of Nahibowitz' estate. In those capacities, Anton Faford was in charge of the financial affairs of Nahibowitz and Nadgy Faford, and he had access to their safe deposit boxes and wills.

Anton Faford testified, however, that when he emptied his mother's safe deposit box after her death, he did not find the 1993 will. He denied ever knowing about the existence of the 1993 will or its terms. He stated that he knew only of Nahibowitz' desire to sell the development rights of the land for $1 million, but nothing of her desire to donate the land. The court did not credit Anton Faford's testimony.

Connecticut follows "the common-law doctrine that if a will cannot be found after the death of the maker, a prima facie rebuttable presumption arises that the maker destroyed his will with intent to revoke. . . .

The burden of proving revocation generally rests upon the contestant . . . . except in cases of lost wills where the presumption of revocation is involved. . . . The burden is always on the proponent to prove a will for probate, and once the proponent offers evidence that the original cannot be located, the presumption of revocation arises. Once this presumption is established, the burden is then upon the proponent to rebut the presumption [of revocation] by clear and satisfactory proof." (Citations omitted; internal quotation marks omitted.) *Patrick* v. *Bedrick*, 169 Conn. 125, 126–27, 362 A.2d 987 (1975); see also General Statutes § 45a-257.[4]

There is an exception to the general rule that a missing will is deemed to have been revoked. If the lost will was last known to be in the charge of another person, then it is presumed that the will was lost and not revoked because if another person possessed the testator's will and the will was not in the testator's presence, then the testator could not have formed the requisite intent to revoke the will. See *In the Matter of the Estate of Mary Ruffino*, Probate Court, district of West Hartford-Bloomfield at West Hartford (August 9, 1983) (9 Conn. L. Trib., No. 48, p. 19), citing G. Wilhelm, Connecticut Estates Practice § 46 (1974).

As this issue presents a mixed question of law and fact, we apply plenary review. See *Winchester* v. *McCue*, 91 Conn. App. 721, 726, 882 A.2d 143, cert. denied, 276 Conn. 922, 888 A.2d 91 (2005). We must therefore decide whether the court's conclusions are legally and logically correct and find support in the facts that appear in the record. See id.

In this instance, the court found that the will was last in the charge of another person because Etta Klee's

---

[4] General Statutes § 45a-257 provides in relevant part that "a will or codicil shall not be revoked in any other manner except by burning, cancelling, tearing or obliterating it by the testator or by some person in the testator's presence by the testator's direction, or by a later will or codicil."

affidavit put the 1993 will last in the possession of Nadgy Faford. Thus, the court held that the presumption that the 1993 will was revoked was rebutted. No evidence introduced at trial either contradicted Etta Klee's affidavit that Nadgy Faford was the last person in possession of the 1993 will or established that the 1993 will later was revoked by Nahibowitz. Accordingly, the court properly concluded that the 1993 will was lost and not revoked.

### III

Finally, the defendants claim that the court improperly concluded that the decrees issued by the Probate Court were the result of fraud, negligence or mistake. Because we agree with the court's finding regarding fraud, we need not assess whether the decrees also were issued as a result of negligence or mistake.

As a general rule, the Probate Court has exclusive subject matter jurisdiction over matters involving validity of wills and settlement of estates. *Dunham* v. *Dunham*, 204 Conn. 303, 328, 528 A.2d 1123 (1987), overruled in part on other grounds, *Santopietro* v. *New Haven*, 239 Conn. 207, 213 n.8, 682 A.2d 106 (1996); see also General Statutes § 45a-24. Only in exceptional circumstances, such as fraud, mistake or a like equitable ground, may a court consider an equitable attack on a probate order or decree.[5] *Dunham* v. *Dunham*, supra, 328; see also *Miller* v. *McNamara*, 135 Conn. 489, 495, 66 A.2d 359 (1949).

"Fraud and misrepresentation cannot be easily defined because they can be accomplished in so many different ways. They present, however, issues of fact.

---

[5] General Statutes § 45a-24 provides in relevant part that "[a]ll orders, judgments and decrees of courts of probate, rendered after notice and from which no appeal is taken, shall be conclusive and shall be entitled to full faith, credit and validity and shall not be subject to collateral attack, except for fraud."

. . . The trier of facts is the judge of the credibility of the testimony and of the weight to be accorded it. . . . When the trial court finds that a plaintiff has proven all of the essential elements of fraud, its decision will not be reversed or modified unless it is clearly erroneous in light of the evidence and the pleadings in the record as a whole." (Citation omitted; internal quotation marks omitted.) *Harold Cohn & Co.* v. *Harco International, LLC*, 72 Conn. App. 43, 50, 804 A.2d 218, cert. denied, 262 Conn. 903, 810 A.2d 269 (2002).

"Under the common law . . . it is well settled that the essential elements of fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." (Internal quotation marks omitted.) *Leonard* v. *Commissioner of Revenue Services*, 264 Conn. 286, 296, 823 A.2d 1184 (2003). "All of these ingredients must be found to exist . . . . Additionally, [t]he party asserting such a cause of action must prove the existence of the first three of [the] elements by a standard higher than the usual fair preponderance of the evidence, which . . . we have described as clear and satisfactory or clear, precise and unequivocal." (Internal quotation marks omitted.) *Harold Cohn & Co.* v. *Harco International, LLC*, supra, 72 Conn. App. 51.

A review of the record reveals that the court found by clear and satisfactory evidence that the Probate Court issued the decrees granting the probate of the 1973 will as a result of the fraud perpetrated by Anton Faford. The court found that Anton Faford knew of the existence and the terms of the 1993 will because he scheduled a meeting with Borner to correct a typographical error in the will and later took Nahibowitz to Borner's office to make the correction. Additionally, the court found that Anton Faford had an interest in the estate

of Nahibowitz, as a beneficiary of the estate. Anton Faford also had access to the safe deposit box that Nahibowitz and Nadgy Faford shared, which allegedly contained the 1993 will, because he was Nadgy Faford's and Nahibowitz' conservator, the administrator of Nahibowitz' estate and the executor of Nadgy Faford's estate. Although Anton Faford denied knowledge of the 1993 will, as noted previously, the court specifically found that he was not a credible witness and accordingly did not credit his testimony.

In sum, the court properly found that Anton Faford's submission of the 1973 will to the Probate Court constituted a false representation that the 1973 will was Nahibowitz' last will and testament, that Anton Faford knew such a representation was untrue because he knew of the existence of the 1993 will that revoked the 1973 will, that Anton Faford submitted the 1973 will for probate with the intention of inducing the Probate Court to issue a decree granting the probate of the 1973 will and, finally, that the Probate Court acted on the false representation. On the basis of the evidence adduced at trial, the judgment holding that the decrees issued by the Probate Court were the result of fraud is not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.