******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WALTER WHITNEY *v.* J.M. SCOTT
ASSOCIATES, INC., ET AL.
(AC 36912)

Lavine, Keller and Pellegrino, Js.

*Argued November 30, 2015—officially released April 12, 2016*

(Appeal from Superior Court, judicial district of
Litchfield, Danaher, J.)

*Kenneth J. Bartschi*, with whom were *Karen L. Dowd*
and, on the brief, *Bruce L. Elstein*, for the appellants-
appellees (defendant James M. Scott, Jr., et al.).

*Ann H. Rubin*, with whom were *Sarah Healey*, and,
on the brief, *Anne D. Peterson*, for the appellee-appel-
lant (plaintiff).

*Opinion*

PELLEGRINO, J. The defendants James M. Scott, Jr., and Scott Swimming Pools, Inc. (corporation),[1] appeal from the judgment of the trial court rendered in favor of the plaintiff, Walter Whitney. We affirm in part and reverse in part the judgment of the trial court.

On appeal, the defendants claim that the trial court (1) improperly determined the measure of damages for breach of the parties' stock option purchase agreement, (2) erroneously failed to order the plaintiff to return his shares of stock as provided in that agreement, (3) erroneously based its award of common-law punitive damages on a lodestar analysis, (4) improperly altered its decision in response to a motion for articulation by taking evidence and making new findings, and (5) improperly ordered prejudgment interest pursuant to General Statutes § 37-3a. We conclude that the trial court properly determined the measure of damages for breach of the stock option purchase agreement, but that the court erroneously failed to order the plaintiff to return his shares of stock, calculated punitive damages, and ordered prejudgment interest. We also conclude that the defendants' articulation claim is moot.

The following facts as found by the trial court inform our review. This case arises out of a business relationship between Scott and the plaintiff. Scott is the president and the majority stockholder of the corporation. On March 20, 2002, the plaintiff entered into three agreements with the defendants: (1) an employment agreement; (2) a stock option purchase agreement; and (3) a supplemental letter agreement. The agreements documented an arrangement under which the plaintiff became the owner of twenty shares of corporation stock and he would work for the corporation for five years, after which time Scott would retire and the plaintiff would have the right to purchase the remainder of Scott's shares in the corporation. The employment agreement set out the plaintiff's duties at the corporation and his compensation structure. The employment agreement provided that beginning July 1, 2002, the plaintiff could be terminated from employment only for adequate cause, which was defined in the agreement.[2] If the plaintiff were terminated for adequate cause and he disputed the termination, the employment agreement provided that the dispute shall be settled by arbitration. The employment agreement also provided that if the plaintiff was terminated without adequate cause, the corporation would pay liquidated damages and buy back the plaintiff's twenty shares of stock for $26,000.[3]

Under the stock option purchase agreement, after five years of employment with the defendants, the plaintiff would acquire the right to purchase the balance of the corporation stock from Scott for $1.27 million,

payable over ten years at 7 percent interest. That agreement provided that the plaintiff would employ Scott as a consultant for up to five years. Both the employment agreement and the stock option purchase agreement were supplemented by a letter setting forth additional terms. Before entering into the agreements, the plaintiff reviewed the corporation's financial statements, tax returns, and corporate records. The defendants, however, concealed information relating to the financial statements, including deferred compensation liabilities owed to Scott, which exceeded $1.6 million.

The agreements were executed in March, 2002, and the plaintiff began his employment for the corporation. The plaintiff received bonuses throughout his employment, but he was never given a performance review or evaluation. In August, 2006, Scott informed the plaintiff that he no longer intended to sell the corporation stock to the plaintiff. In October, 2006, over the course of one day, Scott sent seven memoranda to the plaintiff, all criticizing the plaintiff's work. In December, 2006, approximately three months before the plaintiff was to have purchased the corporation stock, Scott terminated the plaintiff's employment. Scott used the memoranda sent to the plaintiff in an effort to establish that the defendants had adequate cause to terminate the plaintiff's employment for poor job performance.

In January, 2007, the plaintiff claimed a right to arbitrate the dispute with the defendants, pursuant to the employment agreement and the stock option purchase agreement. Arbitration began in September, 2007, and continued until August, 2009, when Scott claimed that he lacked funds to continue arbitration. The plaintiff then commenced the present action and filed the operative complaint in June, 2012.

The complaint alleged, inter alia, common-law fraud, breach of contract, breach of the covenant of good faith and fair dealing, and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. In response, the defendants' alleged multiple special defenses and a multicount counterclaim, which alleged claims of, inter alia, breach of the employment agreement, breach of the stock option purchase agreement, and abuse of process.

A trial to the court began in May, 2013, and the court found in favor of the defendants on the CUTPA claim and in favor of the plaintiff on the other claims. The court also found in favor of the plaintiff on all counts of the defendants' counterclaim. The court further found that the plaintiff was terminated from his employment without adequate cause, as defined in the employment agreement, and that the defendants engaged in common-law fraud. The court based the fraud finding on the fact that the defendants deliberately failed to disclose the deferred compensation obligation, which exceeded $1.6 million, when the plaintiff requested

access to the corporation's financial statements and records prior to entering into the agreements with the defendants.

The court awarded the plaintiff breach of contract damages, liquidated damages, arbitration costs, punitive damages, and prejudgment interest. This appeal followed. Additional facts will be set forth as necessary.

I

The defendants first claim that the trial court applied an improper measure of damages when it calculated damages for the defendants' breach of the stock option purchase agreement. The court calculated damages under a "benefit of the bargain" theory. The defendants argue that the calculation under that theory was improper and that the only proper measure of damages is the difference between the purchase price of the stock and the value of the stock. We do not agree. The measure of damages as determined by the trial court under the "benefit of the bargain" theory was proper, and we, therefore, affirm the court's damages award.

The following additional facts, as found by the trial court, are necessary for our resolution of this issue. The plaintiff testified that he planned to own the corporation for ten years. His plan was to work for five years as owner of the corporation. After five years, he would replicate what Scott had done with him, in that he would find an individual to succeed him, train the individual for an additional five years, and then convey the corporation to the individual under the same terms that Scott was to convey the corporation to him. Thus, he planned to own the corporation for a total of ten years.[4] He also testified that while he owned the corporation, he expected to receive ten years of salary at $175,000 annually, the rate he was receiving when he was terminated. In proving damages for the breach of the stock option purchase agreement, the plaintiff presented a "benefit of the bargain" calculation, which the court used as the basis for the breach of contract damages award. This calculation was based on the annual salary the plaintiff was paid during his employment with the corporation, plus benefits, for the ten year period he planned to own the corporation, reduced by the earnings he acquired from substitute employment and unemployment compensation.

The trial court found that while he was employed by the corporation, the plaintiff received an annual salary of $142,153, plus benefits valued at $32,850, for a total annual compensation of $175,003. That figure over ten years equaled $1,750,030. The plaintiff's substitute employment and unemployment compensation after his employment was terminated totaled $408,970.60. That figure subtracted from $1,750,030 equals $1,341,059.40. The court found this latter figure to be an appropriate measure of the "benefit of the bargain" damages the

defendants owed to the plaintiff due to their breach of the stock option purchase agreement. We agree.

We set forth the standard of review applicable to challenges of damages awards. "[T]he trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous." (Internal quotation marks omitted.) *Russell* v. *Russell*, 91 Conn. App. 619, 643, 882 A.2d 98, cert. denied, 276 Conn. 924, 925, 888 A.2d 92 (2005). "When, however, a damages award is challenged on the basis of a question of law, our review [of that question] is plenary." (Internal quotation marks omitted.) *Robert* v. *Scarlata*, 96 Conn. App. 19, 22, 899 A.2d 666 (2006).

In determining the damages for a breach of contract, the applicable principles are well established. "It is axiomatic that the sum of damages awarded as compensation in a breach of contract action should place the injured party in the same position as he would have been in had the contract been performed [by the breaching party]." (Internal quotation marks omitted.) *Russell* v. *Russell*, supra, 91 Conn. App. 643. "[C]ontract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of the bargain by awarding a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed." (Internal quotation marks omitted.) *Keefe* v. *Norwalk Cove Marina, Inc.*, 57 Conn. App. 601, 610, 749 A.2d 1219, cert. denied, 254 Conn. 903, 755 A.2d 881 (2000). "In determining the proper measure of damages, we are guided by the purpose of compensatory damages, which is to restore an injured party to the position he or she would have been in if the wrong had not been committed." (Internal quotation marks omitted.) *Day* v. *Gabriele*, 101 Conn. App. 335, 346, 921 A.2d 692, cert. denied, 284 Conn. 902, 931 A.2d 262 (2007).

We conclude that the damages awarded by the court was a legitimate exercise of the court's broad discretion. The stock option purchase agreement contained no provision for liquidated damages in the event of a breach, unlike the liquidated damages clause in the employment agreement. Thus, the court had the discretion to determine the measure of damages. The court explained that it was fashioning a remedy to award the plaintiff "an appropriate measure of the 'benefit of the bargain' owed to the plaintiff as damages resulting from the defendants' breach of the [stock option purchase agreement]" and the court relied on the correct principles of law in determining contract damages. In its memorandum of decision, the court stated in pertinent part: " 'It is axiomatic that the sum of damages awarded as compensation in a breach of contract action should place the injured party in the same position as he would have been in had the contract been performed. . . .

The injured party . . . is entitled to retain nothing in excess of that sum which compensates him for the loss of his bargain. . . . Guarding against excessive compensation, the law of contract damages limits the injured party to damages based on his actual loss caused by the breach. . . . In such circumstances, the amount of the cost saved will be credited in favor of the wrongdoer . . . that is, subtracted from the loss . . . caused by the breach in calculating [the injured party's] damages.' . . . *Hees* v. *Burke Construction, Inc.*, 290 Conn. 1, 7–8, 961 A.2d 373 (2003). It is also well established 'that the burden of proving damages is on the party claiming them. . . . When damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty.' . . . *FCM Group, Inc.* v. *Miller*, 300 Conn. 774, 804, 17 A.3d 40 (2011)."

It was in the court's discretion to calculate an amount of damages that it considered sufficient to place the plaintiff in the same position as he would have been in if the contract had not been breached. We agree with the court's approach. The award of ten years salary was factually supported because it was based on the plaintiff's actual earnings prior to and at the time of the breach. Furthermore, it was legally correct insofar as it resulted from the court's determination of the benefit of the bargain owed to the plaintiff and what was necessary to put him in as good a position as he would have been in had the contract been performed. We therefore conclude that the defendants' claim is without merit and affirm the court's damages award.

II

The defendants next claim that the court erroneously failed to enforce the stock option purchase agreement, which required the plaintiff to return his shares of stock if he was terminated from employment. We agree with the defendants.

The following additional facts are necessary for our resolution of this issue. Pursuant to the stock option purchase agreement, on March 20, 2002, the plaintiff obtained twenty shares of stock in the corporation. The stock option purchase agreement provided that the plaintiff must return his stock in the corporation if his employment was terminated.

Section 2.3 of the stock option purchase agreement states in pertinent part: "(a) If [the plaintiff's] employment by the Company terminates or [the plaintiff] terminates his employment with the Company for any reason other than death, then [the plaintiff] shall be obligated to sell his Common Stock, and the Company and Scott shall be jointly and severally obligated to [the plaintiff] to purchase all his Common Stock, as provided below. . . . (f) If [the plaintiff's] employment is found to have been terminated without Adequate Cause and he is paid

the damages provided for in Section 8.4 of the Employment Agreement[5] between [the plaintiff] and the Company of even date herewith, the shares shall be returned to Scott. The purchase price for such shares shall be $26,000 plus the amount of any taxes due upon transfer of such shares. The purchase price shall be in addition to the amount of damages set out above. Upon delivery of such payment to [the plaintiff], [the plaintiff] shall deliver his Common Stock as directed by Scott and the Company."

In count two of the defendants' counterclaim, the defendants sought specific performance of § 2.3 of the stock option purchase agreement. The court found that the defendants could not prevail on count two of their counterclaim because the court found that the plaintiff's termination was fraudulent.[6] The court cited *Phoenix Leasing, Inc.* v. *Kosinski*, 47 Conn. App. 650, 654, 707 A.2d 314 (1998), for the proposition that the court will not enforce a contractual provision when the party seeking enforcement of that provision engaged in fraud.

The defendants argue that because the court found that the plaintiff had been terminated without adequate cause and ordered the liquidated damages provided for in § 8.4 of the employment agreement, under the plain language of the stock option purchase agreement, the plaintiff was required to return the twenty shares of corporation stock he acquired in 2002 upon payment of the liquidated damages and payment of $26,000 as provided in § 2.3 (f) of the stock option purchase agreement. We agree.

The plaintiff chose to enforce the stock option purchase agreement and seek damages for its breach. Thus, that agreement remains in force. "A defrauded party has the option of seeking rescission or enforcement of the contract and damages. Fraud in the inducement of a contract ordinarily renders the contract merely voidable at the option of the defrauded party, who also has the choice of affirming the contract and suing for damages. . . . If he pursues the latter alternative, the contract remains in force . . . ." (Internal quotation marks omitted.) *Harold Cohn & Co.* v. *Harco International, LLC*, 72 Conn. App. 43, 49–50, 804 A.2d 218, cert. denied, 262 Conn. 903, 810 A.2d 269 (2002).

Accordingly, "[w]here the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definite contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . Our standard of review, therefore, is plenary." (Citations omitted; internal quotation marks omitted.) *ARB Construction, LLC* v. *Pinney Construction Corp.*, 75 Conn. App 151, 154–55, 815 A.2d 705 (2003).

The principles governing contract interpretation are well settled. "The intent of the parties as expressed in a contract is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words . . . ." (Internal quotation marks omitted.) *Sullo Investments, LLC* v. *Moreau*, 151 Conn. App. 372, 380, 95 A.3d 1144 (2014)

The liquidated damages clause in the employment agreement stated that damages shall be the lesser of the plaintiff's actual damages or $150,000, plus "the amount of the purchase price provided for in Section 2.3 (f) of the Stock Option Purchase Agreement . . . ." Section 2.3 of the stock option purchase agreement clearly and unequivocally states that if the plaintiff's employment is terminated without adequate cause and he is paid the liquidated damages provided for in § 8.4 of the employment agreement, then the shares of stock shall be returned to Scott for a purchase price of $26,000. The trial court found the plaintiff's termination to be without adequate cause and awarded him liquidated damages in the amount of $138,461.77. Consequently, the plaintiff was required to return his shares of stock upon receipt of a $26,000 payment from the defendants.

In finding that the plaintiff was not required to return the stock because the plaintiff's termination was fraudulent, the court relied on *Phoenix Leasing, Inc.* v. *Kosinski*, supra, 47 Conn. App. 654. Such reliance is misplaced. *Phoenix Leasing, Inc.*, concerned the enforcement of a choice of forum clause, not the remedies for a breach of contract. In recognizing the due process concerns when personal jurisdiction was at issue, this court stated "[a]bsent a showing of fraud or overreaching, such forum clauses will be enforced by the courts." (Internal quotation marks omitted.) Id. The procedural question at issue in *Phoenix Leasing, Inc.*, is thus not applicable to the contractual provision at issue here.

We conclude that the trial court's decision not to enforce § 2.3 of the stock option purchase agreement and not to require the plaintiff to return the stock was erroneous, and, therefore, we reverse the judgment in that respect and remand the case with direction to order the plaintiff to return the stock upon receipt of a payment of $26,000 from the defendants.

III

The defendants next claim that the court erroneously based its award of common-law punitive damages on a lodestar analysis. The defendants argue that the proper measure of damages is the plaintiff's actual litigation costs plus attorney's fees. We agree that the court

improperly determined the punitive damages award and remand the case for a hearing on punitive damages.

The following additional facts inform our review. The court found in favor of the plaintiff on his common-law fraud count and awarded him $250,000 in punitive damages, without articulating the basis of that sum. Although the court indicated that the defendants would have an opportunity to challenge the amount of attorney's fees in a posttrial hearing, the court did not afford the defendants the opportunity to do so. The defendants filed a motion for articulation, asking the court to set forth the legal and factual basis for the $250,000 punitive damages award. In its articulation, the court indicated that the plaintiff had introduced an exhibit at trial that showed attorney's fees billings of $138,616.19 up to June 19, 2013. The court further noted that the trial was not complete as of that date, so it did not reflect the total attorney's fees and ordinary litigation expenses in the case. Therefore, the court awarded the plaintiff $250,000 in punitive damages, which, "in the court's opinion, were reasonable fees for the entirety of the legal services provided to the plaintiff, through to completion of the trial and posttrial briefing."

We first set forth the relevant standard of review and the legal principles that inform our analysis. "Appellate courts review the trial court's decision to award attorney's fees for abuse of discretion. . . . This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . Under the abuse of discretion standard for review, [an appellate court] will make every reasonable presumption in favor of upholding the trial court's ruling and only upset it for a manifest abuse of discretion. . . . [Thus] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Perez* v. *D & L Tractor Trailer School*, 117 Conn. App. 680, 701–702, 981 A.2d 497, cert. denied, 294 Conn. 923, 985 A.2d 1062 (2009).

With respect to common-law causes of action, "[t]o furnish a basis for recovery of punitive damages, the pleadings must allege and the evidence must show wanton or wilful malicious misconduct, and the language contained in the pleadings must be sufficiently explicit to inform the court and opposing counsel that such damages are being sought." (Internal quotation marks omitted.) *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 335, 852 A.2d 703 (2004). "It is clear in our law that an award of punitive damages cannot exceed the amount of the plaintiff's expenses of litigation in the suit, less his taxable costs." (Internal quotation marks omitted.) *R.I. Pools, Inc.* v. *Paramount Concrete, Inc.*, 149 Conn. App. 839, 876, 89 A.3d 993, cert. denied 312 Conn. 920, 94 A.3d 1200 (2014). "[T]he

initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. . . . The courts may then adjust this lodestar calculation by other factors [outlined in *Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)]. . . . The *Johnson* factors may be relevant in adjusting the lodestar amount, but no one factor is a substitute for multiplying reasonable billing rates by a reasonable estimation of the number of hours expended on the litigation." (Footnote omitted; internal quotation marks omitted.) *Carrillo* v. *Goldberg*, 141 Conn. App. 299, 317–18, 61 A.3d 1164 (2013).

When the court awarded the plaintiff $250,000 in punitive damages, it provided no numerical analysis of how it reached that number. At the time of the award, the court only had evidence of attorney's fees billings of $138,616.19, which reflected billings up to June 19, 2013. The court provided no analysis of how it reached an award of an additional $111,383.81, other than stating that it was based on "reasonable fees for the entirety of the legal services provided to the plaintiff . . . ." This does not comport with the proper way of doing a lodestar analysis under our case law. See *Laudano* v. *New Haven*, 58 Conn. App. 819, 822–23, 755 A.2d 907 (2000). We conclude that the $250,000 punitive damages award was erroneous, and, therefore, the judgment is reversed in that respect and the case is remanded for a new hearing on punitive damages.

IV

The defendants next claim that the court improperly took evidence and made findings as to the plaintiff's litigation costs in a hearing on the defendants' motion for articulation. The defendants argue that the court lacked authority to make new findings in response to the motion for articulation, and, therefore, its findings as to the plaintiff's actual litigation costs should be disregarded. Because we hold that the court's punitive damages award was improper and remand the case for a new hearing on punitive damages, this issue is moot. "[I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Cornelius*, 131 Conn. App. 216, 219, 26 A.3d 700, cert. denied, 302 Conn. 946, 30 A.3d 1 (2011).

V

The defendants' final claim is that the trial court erred when it awarded prejudgment interest on the damages for the breach of the stock option purchase agreement and the breach of the arbitration provisions found in the employment and the stock option purchase agreements (arbitration agreement).[7] The defendants argue that

such interest is only appropriate where damages are liquidated, and here, the damages were not liquidated, but instead are intended to make the plaintiff whole for the breach of contract found by the court. We agree with the defendants.

The following facts are pertinent to our resolution of this issue. In addition to breach of contract damages for the breach of the stock option purchase agreement, the court also awarded the plaintiff $65,000 for his arbitration costs because the court found that the defendants had breached the arbitration agreement. The court initially awarded the plaintiff interest pursuant to § 37-3a (a) at the rate of 10 percent annually. The defendants filed a motion for articulation asking that the court indicate the date on which interest was to start, as well as the legal and factual basis for that date. In its articulation, the court explained that the defendants breached the contract at various points beginning on the date the employment agreement was signed on March 20, 2002, when the defendants did not supply the plaintiff with the complete financial information that he had requested prior to signing that agreement. The court further explained that it intended for interest on damages to begin on March 1, 2007— the date on which the plaintiff sought to have statutory interest commence as provided in its posttrial memorandum—and interest on punitive damages to begin on the date of judgment and continue until the judgment was paid. The court noted its award was based on the authority provided by § 37-3a (a) and *DiLieto* v. *Country Obstetrics & Gynecology Group, Inc.*, 310 Conn. 38, 49 n.11, 74 A.3d 1212 (2013).

We begin by setting forth the standard of review. "Parties claiming damages for breach of contract must have a statutory basis for a claim of interest. . . . We must, therefore, determine whether as a matter of law, such a basis existed here." (Citations omitted.) *Foley* v. *Huntington Co.*, 42 Conn. App. 712, 739, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996). The decision to grant interest pursuant to § 37-3a is reviewed under an abuse of discretion standard. *Sosin* v. *Sosin*, 300 Conn. 205, 227, 14 A.3d 307 (2011).

Section 37-3a (a) provides in relevant part: "Except as provided in section 37-3b, 37-3c and 52-192, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil action . . . as damages for the detention of money after it becomes payable. . . ." "The statute, therefore, applies to claims involving the wrongful detention of money *after* it becomes due and payable." (Emphasis in original.) *Foley* v. *Huntington Co.*, supra, 42 Conn. App. 740. "To award § 37-3a interest, two components must be present. First, the claim to which the prejudgment interest attaches must be a claim for a liquidated sum of money wrongfully withheld and, second, the trier of fact must find, in its

discretion, that equitable considerations warrant the payment of interest." *Ceci Bros., Inc.*, v. *Five Twenty-One Corp.*, 81 Conn. App. 419, 428, 840 A.2d 578, cert. denied, 268 Conn. 922, 846 A.2d 881 (2004). When the damages awarded to the plaintiff are for the loss of the benefit of the bargain and do not involve liquidated damages, § 37-3a does not apply and the plaintiff is not entitled to prejudgment interest. *Foley* v. *Huntington Co.*, supra, 742.

In the present case, the damages at issue for the breach of the stock option purchase agreement and the arbitration agreement are not liquidated damages that fall within the scope of § 37-3a. These damages were uncertain at the time of the breach, and the defendants could not know the amount owed until the court determined them. Accordingly, § 37-3a does not authorize an award of prejudgment interest on these damages. We conclude that the prejudgment interest award with respect to damages for the breach of the stock option purchase agreement and the arbitration agreement was erroneous, and, therefore, the judgment is reversed as to that award.

The judgment is reversed with respect to the defendants' counterclaim of specific performance of the stock option purchase agreement, the award of punitive damages and the award of prejudgment interest, and the case is remanded with direction to render judgment ordering specific performance of that agreement and for a hearing on punitive damages. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] All claims against the named defendant, J.M. Scott Associates, Inc., were withdrawn or resolved, and it is not a party to this appeal. Accordingly, we refer in this opinion to Scott and Scott Swimming Pools, Inc., collectively as the defendants and individually by name when necessary.

[2] Section 8.3 of the employment agreement states in relevant part: " 'Adequate Cause' for termination of [the plaintiff] is limited to conviction of or a plea of guilty to a felony or misdemeanor, dishonesty, any other criminal conduct against the Corporation, or a continued breach of the [plaintiff's] duties and obligations arising under this Agreement or of any written policy, rule, or regulation of the Corporation, for a period of 5 days following his receipt of written notice from the President specifying such breach. If the Corporation terminates the [plaintiff] for 'Adequate Cause' and the [plaintiff] disputes the termination, such dispute shall be settled by arbitration as set out in Section 9 of this Agreement . . . ."

[3] The employment agreement provided that the plaintiff was to be paid "the purchase price provided for in Section 2.3 (f) of the Stock Option Purchase Agreement." The stock option purchase agreement specified a purchase price of $26,000.

[4] The plaintiff testified: "My plan was to work in the company for five years, five years subsequent I would, as owner, work and benefit from ownership of the company, and then in the final five years I would replicate it, to the best of my ability, what Jim Scott had done, namely, find an individual that could succeed me, train them over a period of five years, convey the company to that individual under, for purposes of this calculation, the same terms as were conveyed to me, just for the sake of clarity and simplicity, and then at age 66, 65 and 66, I would retire and be in the same condition of receiving a payout on a note for the same amount that Jim Scott had sold the company to me for."

[5] Section 8.4 of the employment agreement states: "If the [plaintiff] is found to have been terminated without Adequate Cause, the amount of his

damages shall be limited to the lesser of his actual damages or the sum of $150,000 plus the amount of the purchase price provided for in Section 2.3 (f) of the Stock Option Purchase Agreement among the President, the [plaintiff] and the Corporation of even date herewith. The damages paid to the [plaintiff] set out under this Section 8.4 shall be reduced by the amount of the Unconditional Payment made by the Corporation to the [plaintiff] as set forth in Section 8.3 above."

[6] In addition to finding for the plaintiff on his common-law fraud claim because the defendants did not disclose certain critical financial information before the plaintiff signed the agreements, the court also found that Scott engaged in fraud when he sent the plaintiff seven memoranda, all criticizing the plaintiff's work, over the course of one day in October, 2006, in an effort to "paper the file" and to establish adequate cause for termination.

[7] The defendants do not dispute the award of prejudgment interest as it relates to the liquidated damages awarded for the breach of the employment agreement.

––––––––––––––––––––––––––––––––