## FRANK GALLOGLY *v.* ARTHUR GLEN KURRUS
### (AC 26581)

Bishop, McLachlan and Pellegrino, Js.

Argued May 22—officially released September 26, 2006

*J. Michael Sconyers*, with whom, on the brief, was *Robert E. Ghent*, for the appellant (defendant).

*Julia B. Morris*, with whom, on the brief, was *Amy D. Schuchat*, for the appellee (plaintiff).

*Opinion*

McLACHLAN, J. The defendant, Arthur Glen Kurrus, doing business as Innovation Motors, appeals from the judgment of the trial court rendered in favor of the plaintiff, Frank Gallogly, granting possession to the plaintiff and evicting the defendant on the basis of the finding that the defendant had committed a material breach of the parties' commercial lease. On appeal, the defendant claims that the court improperly (1) denied his motion to dismiss the summary process action for lack of subject matter jurisdiction where, on the face

of the record, the plaintiff issued civil process in violation of General Statutes § 47a-23a before the expiration of the time specified in the notice to quit, (2) found that the defendant materially breached obligations under the lease to deliver a copy of a public liability insurance policy where there was no meeting of the minds as to the form and amount of insurance required under the terms of the lease, and (3) found that the defendant materially breached obligations under the lease to deliver a copy of an insurance policy where there was no meeting of the minds as to the form and amount of insurance required under the terms of the lease.[1] We conclude that because the terms of the lease were not complete as to the insurance obligation, there was no obligation for the defendant to provide any copy of an insurance policy to the plaintiff. Accordingly, we reverse the judgment of the trial court.

The plaintiff and the defendant signed a lease on May 10, 2002, entitled "Business Lease," which was a preprinted form for a commercial lease. The plaintiff was named as the landlord, and the tenant was designated "Innovative Motors, Glenn Kurrus . . . dba Paradise Garage." The premises are located at 438 Lime Rock Road, Lime Rock.

The obligation of the defendant to "maintain appropriate ins[urance]" was handwritten on the lease. Paragraph six of the lease called for the "[t]enant [to] obtain, pay for, and keep in effect for the benefit of the Landlord and the Tenant *public liability* insurance on the Rental Space." (Emphasis added.) The preprinted portion, however, where coverage amounts were to be inserted, was left blank. At trial, the plaintiff testified that the defendant gave him a copy of an insurance certificate evidencing the defendant's coverage in January, 2005. The plaintiff claimed, however, that the defendant failed

---

[1] We will address issues two and three together.

to deliver to him the insurance coverage required by paragraph six of the lease because he deemed the defendant's insurance to be "unacceptable," as the defendant had "obtained garage liability" insurance and not "public liability" insurance. The plaintiff stated that he believed that the "public liability" insurance was the equivalent of "general liability" insurance, which would provide coverage for fire, theft and other casualties.

The "garage liability" insurance that the defendant purchased for three years provided for "garage liability, garage keepers, garage physical damage, medical payments, and errors and omissions coverages." There is no mention of public or general liability coverage in this insurance policy.[2] Each policy was supplemented by $1 million umbrella coverage. At trial, the defendant professed to have coverage for "public liability" and claimed that the insurance he purchased was the coverage required by the department of motor vehicles to issue a license for his business. The defendant also testified that he had "no discussion" with the plaintiff as to the type or amount of insurance required by the lease. The defendant claimed that at all times during the lease, he believed that he had "appropriate insurance" within the meaning of paragraph six of the lease.

The court found that the defendant violated paragraph six of the lease because he did not comply with the specific requirements that he provide the plaintiff with his insurance policy each year. As a result of this failure to deliver a copy of the insurance policy to the plaintiff, the court ruled that this precluded the plaintiff

[2] The certificate of insurance indicates the following:

"Garage Liability. . . . . . . . . . . . . . . . auto, premises, operations

| Per Person | Bodily Injury | $20,000 |
| Per Accident | Bodily Injury | $40,000 |
| Per Accident | Property Damage | $10,000 |
| Aggregate | | $100,000 |
| Umbrella | | $1,000,000" |

An issue not raised by the parties on appeal was the difference, if any, between "public liability" and "garage liability" insurance.

from examining the defendant's policy and assessing both his and the defendant's coverage, and initiating the necessary communication so that each party would be aware of the insurance coverage in effect. In addition, paragraph twenty-three of the lease grants to the landlord the right to reenter the leased rental space in the event that the "[t]enant violates *any* agreement in this [l]ease." (Emphasis added.) That right is to be exercised via eviction and is to be preceded by the notice required by law, which is the statutorily mandated notice to quit. See General Statutes § 47a-23.

The defendant was served with a notice to quit on October 8, 2004. On October 29, 2004, the date specified in the notice to quit, the plaintiff's counsel signed the summary process writ of summons and complaint. On November 1, 2004, the writ of summons and complaint were served on the defendant. On January 11, 2005, the defendant filed a motion to dismiss the action, claiming that the plaintiff issued his summary process writ prior to the expiration of the time specified in the notice to quit in violation of § 47a-23a.[3] The court denied the motion and the trial proceeded. The case was tried on January 11 and 12, 2005. At trial, the court found that the plaintiff had sustained his burden of proof with respect to the claim that the defendant breached the lease by failing to provide the plaintiff with a copy of the defendant's policy of insurance. The court thereafter rendered judgment of possession in favor of the plaintiff. The court allowed the plaintiff to evict the defendant as provided for in paragraph twenty-three because he failed to deliver proof of insurance as required by paragraph six. This appeal followed.

---

[3] General Statutes § 47a-23a (a) provides in relevant part: "If, at the expiration of the three days prescribed in section 47a-23, the lessee or occupant neglects or refuses to quit possession or occupancy of the premises, any commissioner of the Superior Court may issue a writ, summons and complaint which shall be in the form and nature of an ordinary writ, summons and complaint in a civil process, but which shall set forth facts justifying a judgment for immediate possession or occupancy of the premises and make a claim for possession or occupancy of the premises. . . ."

## I

The defendant first claims that the court lacked sub-ject matter jurisdiction because the plaintiff failed to comply with § 47a-23a. See footnote 3. Specifically, he claims that the plaintiff improperly issued the summary process writ prior to the expiration of the time specified on the notice to quit, October, 29, 2004. Thus, the ques-tions are, in the context of this case, when is process issued and when did it occur.

This is an issue of statutory interpretation. In the absence of a statutory definition of the meaning of "issue," we look to the common meaning of the word and its dictionary definition. See *Lombardo's Ravioli Kitchen, Inc.* v. *Ryan*, 268 Conn. 222, 232, 842 A.2d 1089 (2004); *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 33, 699 A.2d 101 (1997). "Issue" is defined by Black's Law Dictionary as meaning: "To send forth; to emit; to promulgate; as, an officer issues orders, process issues from a court. To put into circulation; as, the treasury issues notes. To send out, to send out officially; to deliver, for use, or authoritatively; to go forth as authoritative or binding. When used with refer-ence to writs, process, and the like term is ordinarily construed as importing delivery to the proper person, or to the proper office for service . . . ." Black's Law Dictionary (5th Ed. 1979). The term "issue" means more than mere clerical preparation, dating and attestation of a writ and, as applied to a citation, includes delivery to an officer or third person for delivery to an officer for service. *Snell* v. *Knowles*, 87 S.W.2d 871, 876 (Tex. Civ. App. 1935).

"As this issue presents a mixed question of law and fact, we apply plenary review. . . . We must therefore decide whether the court's conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted.) *Ferris* v.

*Faford,* 93 Conn. App. 679, 690, 890 A.2d 602 (2006). The court found that the summary process was issued on November 1, 2004. The record contains a cover letter from the plaintiff's attorney to the judicial marshal, dated November 1, 2004, which was also the date of service. The court determined that November 1, 2004, the date the summary process was delivered to the judicial marshal, was the date summary process was issued. The court correctly found that the writ was not issued in violation of § 47a-23a.

## II

The defendant next claims that "[b]ecause there was no meeting of the minds regarding the form and amount of public liability coverage required under the lease, the defendant was under no contractual obligation to provide a public liability or accident and general liability policy." We agree.

This claim raises a question of contract interpretation, for which our standard of review is well established. "[W]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . Because a question of law is presented, review of the trial court's ruling is plenary, and this court must determine whether the trial court's conclusions are legally and logically correct, and whether they find support in the facts appearing in the record." (Internal quotation marks omitted.) *Detar* v. *Coast Venture XXVX, Inc.,* 74 Conn. App. 319, 322, 811 A.2d 273 (2002).

The court concluded that the parties did not agree on the meaning of "public liability insurance" as the phrase appears in paragraph six of the lease, yet considered the issue as to whether the defendant placed and kept in force the requisite insurance coverage. The

court ruled that it was unable to "resolve the disagreement over the type of insurance, as there was no meeting of the minds of the parties on that issue, and there was no expert or competent testimony that meaningfully explained the difference between public liability and garage liability insurance"; (internal quotation marks omitted); yet, it still allowed for the plaintiff to evict the defendant on the ground that the alleged breach by the defendant concerned his failure to comply with the insurance delivery provisions of the lease.

We conclude that because the court found that there was no meeting of the minds as to the type of insurance required by the defendant, the issue of delivery of the insurance is irrelevant. "In order for an enforceable contract to exist, the court must find that the parties' minds had truly met. . . . If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they themselves did not make." (Citations omitted; internal quotation marks omitted.) *Fortier* v. *Newington Group, Inc.*, 30 Conn. App. 505, 510, 620 A.2d 1321, cert. denied, 225 Conn. 922, 625 A.2d 823 (1993).

The lease did not specify what constituted public liability insurance. Nor was there any evidence that the parties had prior dealings that would have allowed the court to "flesh out the intended meaning of indefinite contract language by recourse to trade custom, standard usage and past dealings." *Willow Funding Co., L.P.* v. *Grencom Associates*, 63 Conn. App. 832, 844, 779 A.2d 174 (2001). Accordingly, the "public liability insurance" referred to in the agreement is so vague and indefinite as to be unenforceable. See *Small Business Transportation, Inc.* v. *ABC Stores, LLC*, 96 Conn. App. 14, 19, 899 A.2d 73 (2006). The parties never agreed as to the amount and type of insurance coverage that the

defendant was obligated to provide; thus, the defendant could not be in default of his obligation to obtain the insurance and to provide a copy of such insurance policy annually.

The judgment is reversed and the case is remanded with direction to render judgment in favor of the defendant.

In this opinion the other judges concurred.